In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2363

IN RE:
HOLSTEIN MACK & KLEIN, a partnership,

Debtor.


AMERICAN NATIONAL BANK & TRUST CO.
OF CHICAGO,

Plaintiff-Appellee,

v.

ROBERT A. HOLSTEIN & ASSOCIATES, P.C.,

Defendant-Appellant.


Appeal from the United States District Court
for the Northern District of Illinois, Eastern
Division.
No. 98 C 8141--John A. Nordberg, Judge.


Argued January 13, 2000--Decided November 14,
2000


  Before BAUER, POSNER, and ROVNER, Circuit
Judges.

  ROVNER, Circuit Judge.  Robert Holstein
was a principal in the now-defunct
Chicago law firm of Holstein Mack & Klein
("HMK"). When that firm dissolved in
1996, it owed the American National Bank
and Trust Company of Chicago ("ANB" or
"the bank") more than $1.5 million. After
litigation over the debt had commenced,
the bank entered into a forbearance
agreement with, among others, Robert
Holstein and his new firm, Robert A.
Holstein & Associates ("RAHA"). In
exchange for the forbearance, the bank
was given a secured interest in the fees
that RAHA earned during the term of that
agreement. RAHA and the bank also agreed
to divide the fees realized from certain
cases in which RAHA had succeeded HMK as
counsel. Shortly after the agreed-upon

forbearance period expired, RAHA was awarded substantial fees in one of these cases. The bank claims entitlement to the entire award based on the expiration of the forbearance period and its security interest in RAHA's accounts receivable. RAHA, on the other hand, contends that it remains entitled to a quarter of the award based on the language of the fee-sharing provision, which calls for division of the fees regardless of when those fees are received. The bankruptcy and district courts found in favor of the bank, as do we.

I.

Until its dissolution, HMK principally engaged in personal injury and class action litigation. Beginning in 1989, ANB made a number of loans to HMK and of course took a security interest in the firm's property, including its accounts receivable. In 1996, when HMK defaulted on its loan obligations, ANB terminated the firm's line of credit and the firm dissolved. By this time, HMK owed the bank more than $1.5 million. ANB sued HMK and its principals in state court, and in furtherance of its security interest, the bank signaled that it planned to contact HMK's former clients and have them pay any fees they owed the defunct firm to ANB directly. This did not bode well for the firm's principals, who had taken many of HMK's clients with them when the firm dissolved.

Settlement negotiations ensued and culminated in a January 3, 1997 forbearance agreement between ANB, HMK, Holstein, and RAHA, among other parties. In that agreement, the parties acknowledged that the loans ANB had extended to HMK were in default and the entire amount of HMK's debt was due and payable at once. They also confirmed that the bank's security interest in HMK's accounts receivable, as well as the guaranties given by HMK's principals, remained in full force and effect. Furthermore, paragraph 13 of the agreement granted to ANB a new, first-priority security interest in RAHA's "accounts, chattel paper, contract rights, and general intangibles" insofar as they arose from professional services that the new firm provided during the period of the forbearance agreement.

In exchange for the affirmation of existing obligations and the new interest in RAHA's receivables, ANB agreed temporarily to forbear from the full exercise of its rights to collect on the overdue debt. It consented to a stay of the two collection actions that were pending in state court, and it agreed to lengthen the time given HMK and its principals to make good on the debt. para.para. 2, 11, 14.

The bank also gave RAHA access to monies to which ANB would otherwise have been entitled to lay claim, in whole or in part, pursuant to its security interests. Approximately $135,000 remained in HMK's existing account with ANB, for example. Rather than taking all of this money to reduce the outstanding debt, the bank took only $45,000. The remaining $90,000 was transferred to a new account for RAHA at ANB, which RAHA subsequently used to handle day-to-day operating expenses. See para. 12. The agreement also provided for the sharing of fees received by HMK and RAHA (after the associated costs were paid) according to percentages specified in the agreement. para. 16. Paragraph 16(a) of the agreement provided that where the net fees exceeded $100,000, the bank would take 75 percent, while RAHA would take 25 percent. Paragraph 16(e), which lies at the heart of the instant dispute, specified that with respect to certain pending lawsuits identified in an attachment to the agreement, the fees paid to HMK and RAHA "shall be distributed" between ANB and RAHA in accordance with the fee-sharing arrangement "without regard to the date upon which the [money] is received . . . ." (We shall refer to this as the "[whenever] received" provision of the agreement.) The upshot of these provisions was that RAHA obtained access to vital working capital (by ANB's account, some $400,000) to see the firm through its early days as a spinoff from the defunct HMK.

Provided that no further defaults occurred, the forbearance period was originally to have expired no later than June 30, 1997. para. 10. By that time, it was hoped, HMK and its principals would have paid off HMK's outstanding debt or, in the alternative, the parties would have extended the agreement. para. 11. The parties in fact did extend the term

of the forbearance period for at least two months, through August 31, 1997. In late September, however, ANB notified HMK and RAHA that the forbearance period had expired. Paragraph 38 of the agreement made clear what the bank's rights were in this circumstance: HMK's liabilities would become due and payable immediately, and ANB would be entitled to pursue all of the rights and remedies available to it under the original loan agreements, the forbearance agreement, and the Illinois Commercial Code.

One of the cases listed in the forbearance agreement from which net fees were to be shared by the bank and RAHA "[whenever] received" was a lawsuit that had been pending in the Circuit Court of Cook County, Illinois, since 1992 under the name Trucway v. GECAL. That case eventually was settled, and in a series of orders entered in July, August, and September 1997, the state court approved a fee award of just under $700,000, payable jointly to both HMK and RAHA. Payment of the fees was delayed, however, by uncertainty as to who had a right to claim those fees. HMK's share of the award--$469,279.48--was ultimately turned over to ANB in January 1998. The appropriate disposition of RAHA's portion of the net fees--which came to $108,696.29--remained in controversy, however, and that sum was placed in escrow. There was no dispute that RAHA earned its share of the Trucway fees during the term of the forbearance agreement and that, as a result, ANB had a security interest in those fees that the bank could enforce once the period of forbearance concluded. Notwithstanding that interest, RAHA believed that it remained entitled to a 25-percent allocation of those fees under Paragraph 16(a) and (e) of the agreement.

The bankruptcy court and the district court each concluded that ANB was entitled to take the full amount of the fees awarded to RAHA. In the bankruptcy court's view, the forbearance agreement granted ANB a secured interest in any and all fees that RAHA earned during the life of the agreement. That interest necessarily extended to the fees that were allocated to RAHA under Paragraph 16(a). In other words, RAHA had a right, so long as the forbearance period lasted, to 25 percent of the fees awarded to it

in the Trucway litigation, but that allocation was still subject to ANB's security interest. Consequently, once the forbearance term expired, the bank was free to enforce its interest and take RAHA's entire share of the Trucway fees:

[This] is the only reading that will give effect to the Agreement's provisions without adding new restrictive terms to which the parties did not agree. For example, it is significant that nothing in the Agreement excludes fees placed in the RAHA account pursuant to para. 16(a) from ANB's security interest. It should also be noted that prior to entering into the Agreement, ANB already had a security interest in HM&K's share of any fee award. Thus, the only reason for creating the new security interest in para. 13 of the Agreement would be to allow ANB to proceed against RAHA's portion of fee awards.

American Nat'l Bank & Trust Co. of Chicago v. Law Offices of Robert A. Holstein & Assocs., P.C. (In re Holstein Mack & Klein), Adv. No. 98 A 00159, Memorandum Decision, at 10 (Bankr. N.D. Ill. Nov. 18, 1998) (Lefkow, J.). The district court agreed. No. 98 C 8141, 1999 WL 284721 (N.D. Ill. April 28) (Nordberg, J.).

II.

RAHA's appeal turns on the proper construction of the terms of the forbearance agreement. As such, it presents a question of law, and our review of the decisions below is de novo. E.g., Bourke v. Dun & Bradstreet Corp., 159 F.3d 1032, 1036 (7th Cir. 1998).

RAHA's principal argument is straightforward. Under Paragraph 16(a) of the agreement, RAHA had a right to 25 percent of the net fees it realized in the Trucway litigation and the bank had a right to 75 percent of those fees. RAHA acknowledges that Paragraph 13 granted to ANB a security interest in the fees that RAHA earned during the life of the agreement, including the Trucway fees, and that the bank was free to enforce that interest once the forbearance period expired. But in RAHA's view, ANB's security interest is effectively limited by the language in Paragraph 16(e) indicating that fees realized from

Trucway and the other identified cases "shall be distributed" according to the formula specified in Paragraph 16(a) "without regard" to when those fees were received. (Emphasis supplied.) The sole purpose and effect of this "[whenever] received" clause, in RAHA's view, was to make clear that RAHA was entitled to a 25-percent allocation even if the fees were received after the forbearance term had expired. As RAHA sees things, then, one can permit ANB to enforce its security interest by taking RAHA's 25-percent allocation of the Trucway fees only by reading Paragraph 16(e) out of the contract altogether.

We disagree. As RAHA concedes, Paragraph 13 granted ANB a security interest in the fees that RAHA earned during the life of the forbearance agreement, and "[t]he sec. 13 security interest, on its face, unambiguously applies to the disputed Trucway fees." RAHA Br. 6. Possessed of that interest, ANB had a right under Paragraph 38 to reach RAHA's share of the Trucway fees once the forbearance period had come to an end. Nothing in either Paragraph 13 or Paragraph 38 restricted the bank's rights in that regard. Nor do we find such a limitation in Paragraph 16(e). Paragraph 16 says nothing at all about ANB's security interest. It simply serves to allocate to RAHA a share of the fees awarded in Trucway and like cases. So long as the forbearance period continued, RAHA would enjoy the use of those fees, much as ANB had consented to grant RAHA the use of $90,000 of the funds left in HMK's account with the bank. But even if we assume, as RAHA argues, that fees in these cases were to be divided as specified by Paragraph 16 not only during the period of forbearance, but after that period as well, the percentage of such fees allocated to RAHA was still subject to ANB's security interest. Thus, assuming that RAHA retained the right to a 25-percent distribution of the Trucway fees once the forbearance period had expired, ANB had the right, by virtue of its security interest, to step in and collect RAHA's percentage, just as the bank had the right to take any fees that RAHA clients owed to the firm for work it performed during the forbearance period. para.para. 13, 38; see 810 ILCS 5/9-502. In the exercise of its discretion, perhaps, ANB might have elected not to claim RAHA's share of the Trucway fees.

Or perhaps other assets might have proven sufficient to satisfy the outstanding debt. In any case, whatever right RAHA had to an allocation of the Trucway fees, the bank's undisputed security interest in that allocation gave it the right, upon the close of the forbearance period, to keep those fees./1

RAHA secondarily and alternatively argues that if the "[whenever] received" clause does not resolve what it perceives to be the conflict between paragraphs 13 and 16(e) of the agreement, then there is an ambiguity as to the relationship between the two provisions which opens the door to parol evidence as to the parties' understanding of the agreement. See Bourke, 159 F.3d at 1036-37. We discern no ambiguity in the agreement, however. Whatever questions Paragraph 16(e) might raise as to RAHA's right to receive its allocated percentage of attorney fee awards after the forbearance period ended are answered by Paragraphs 13 and 38, which granted ANB a security interest in those fees together with the right to enforce that interest. Nothing in the contract remotely suggests that this interest was anything less than a full, first-prior security interest that ANB could enforce in the usual ways. Thus, once the bank was no longer contractually obligated to forbear, RAHA's right to a 25-percent allocation of the Trucway fees was really a right in name only, wholly subordinate to the bank's right to enforce its security interest.

III.

Under the plain terms of the forbearance agreement, ANB was entitled to take RAHA's share of Trucway fees in furtherance of the bank's security interest, as both the bankruptcy and district courts concluded.
AFFIRMED


/1
We need not consider whether the bank was entitled to reach other funds allocated to RAHA under the agreement, including monies that had already been distributed to the firm during the forbearance period.