**In re Lewis Irving COHEN and Peggy Lynn Chesnut–Cohen, Debtors.**

**Christine Houston and Helen Getsey, Appellants,**

**v.**

**Kenneth S. Eiler, Chapter 7 Trustee; IRA Freydkis; Bank of Astoria; Lewis Irving Cohen; Peggy Lynn Chesnut–Cohen; Appellees.**

**BAP No. OR–03–1306–KMuB.
Bankruptcy No. 02–35671–tmb13.
Adversary No. 02–03586–tmb.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Nov. 20, 2003.

Filed Feb. 24, 2004.

Tara J. Schleicher, Farleigh, Wada & Witt, Portland, OR, for Christine Houston and Helen Getsey.

Robert Vanden Bos, Vanden Bos & Chapman, Portland, OR, for Lewis I. Cohen and Peggy Chesnut–Cohen.

Before KLEIN, MUND,[1] and BRANDT, Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

The substantive question is whether appellants' contractual right to receive funds from the settlement of a tort action can evade the trustee's "strong-arm" avoiding power either as an automatically-perfected "payment intangible" under Revised Article 9 of the Uniform Commercial Code ("UCC"), or as an enforceable equitable assignment not subject to UCC Article 9.

The jurisdictional question is whether chapter 13 debtors have standing to exercise the trustee's avoiding powers for the benefit of the estate.

We conclude that chapter 13 debtors have standing to exercise trustee avoiding powers for the benefit of the estate and, agreeing with the bankruptcy court that the interest in the settlement fund reflects neither a UCC Revised Article 9 "payment intangible" nor an equitable assignment under Oregon law, we AFFIRM the judgment under the trustee's "strong-arm" powers avoiding appellants' interest in the tort settlement proceeds.

## FACTS

In 1999, three years before filing a bankruptcy case, Lewis Cohen and Peggy Chesnut–Cohen were plaintiffs in an automobile personal injury action in a California superior court.

Fred Houston, a neighbor and a principal in "The Investment Partnership" (which factors accounts receivable for businesses and does not ordinarily loan money to individuals), agreed to have "The Investment Partnership" make a loan to the Cohens to help cover expenses associated with the automobile accident.

"The Investment Partnership" and the Cohens executed a "Straight Promissory Note Secured by Deed of Trust of the Same Date and Settlement Lien Agreement of the Same Date" ("Note 1") dated May 28, 1999, for $53,577 plus 13% interest per annum.

As security, the Cohens pledged anticipated proceeds of the tort claim. Thus, Note 1 incorporated a lien agreement in which the Cohens' tort lawyer was directed to pay "The Investment Partnership" $53,577, plus interest, from proceeds of the suit. Note 1 was amended October 28, 1999, to change the principal to $66,577, reflecting an additional loan by "The Investment Partnership" of $10,000, plus a $3,000 fee.

"The Investment Partnership" subsequently transferred Note 1 to Christine Houston and Helen Getsey ("appellants"). The transfer to appellants was accomplished by way of a new substituted note and lien agreement as between the Cohens and Houston and Getsey. Thus, Note 1

---

1. Hon. Geraldine Mund, Bankruptcy Judge from the Central District of California, sitting by designation.

was replaced when the Cohens executed a "Straight Promissory Note Secured by Settlement Lien Agreement" ("Note 2") dated November 20, 2001, in favor of appellants for $83,877 plus interest. Note 2 also incorporated a lien agreement directing the Cohens' tort lawyer to pay appellants $83,877 plus interest from the proceeds of the tort claim. Note 2 included as principal unpaid interest on Note 1.

Note 2 was for a one-year term, with interest payments due monthly thereafter until the principal and interest were paid in full. Note 2 specified that the "loan may be paid sooner, upon borrower receiving money from Insurance Settlement."

Although the Cohens were residents of California at the time of the execution of Note 1, they soon moved to Oregon and were residents of Oregon at the time of the execution of Note 2.

The Cohens filed a chapter 13 bankruptcy on May 24, 2002, and soon thereafter settled the tort claim for $195,000.

In an effort to use the proceeds to help fund their plan, debtors proposed to contest the secured status of appellants in the proceeds of the personal injury suit. The chapter 13 plan provided that the order of confirmation would not preclude debtors from suing to avoid appellants' liens.[2]

The chapter 13 trustee executed an "Assignment of Trustee's Avoidance Claims to Debtors," according to the terms of which the trustee purported to assign the "Estate's rights, powers, and standing to avoid transfers" under 11 U.S.C. §§ 544–48, in exchange for the Cohens' promise to pay net proceeds to the trustee. The court did not expressly approve the assignment.

The Cohens filed an adversary proceeding using the trustee's § 544 "strong-arm" powers to avoid the security interest of appellants in the settlement proceeds, contending that it was an unperfected security interest.[3] The defense was that the interest in the proceeds was either: (1) absolute ownership due to an equitable assignment; or (2) a security interest based on an assignment of a "payment intangible" that is automatically perfected under Revised Article § 9–309 without need for filing.

On summary judgment, the bankruptcy court ruled that the "secured" interest in the settlement proceeds constituted an interest in a general intangible that could only be perfected by filing a UCC financing statement, that it was not a "payment intangible," and that it was not an equitable assignment. Because no financing statement was filed, the security interest was unperfected and avoidable per 11 U.S.C. § 544(a).

The creditors appealed. The case was later converted to chapter 7. The chapter 7 trustee, Kenneth S. Eiler, took over the appeal from the Cohens as real party in interest.

## JURISDICTION

The bankruptcy court had subject-matter jurisdiction per 28 U.S.C. § 1334. We have jurisdiction under 28 U.S.C. § 158(a)(1).

---

2. The plan further provided:
 If Debtors' adversary proceeding to avoid the alleged liens of Helen Getsey and Christine Houston is successful, their claims will be paid as wholly unsecured claims in the case; otherwise the liens will be paid in full outside the Plan by surrender to each creditor of amounts sufficient to pay their claims from the personal injury proceeds with any deficiency treated as an unsecured claim.

3. They also included a count to determine the extent, priority, and validity of the liens under 11 U.S.C. § 506, but did not question the existence of the underlying security interest.

## ISSUES

1. Whether the chapter 13 debtors had standing to maintain an action based on the trustee's avoiding powers.

2. Whether appellants' interest in the settlement proceeds was an enforceable equitable assignment of title to the proceeds.

3. Whether appellants' interest in the settlement proceeds was a security interest in a UCC Revised Article 9 "payment intangible" that is automatically perfected without filing.

## STANDARD OF REVIEW

■ We review summary judgment de novo. *Paine v. Griffin (In re Paine)*, 283 B.R. 33, 36 (9th Cir. BAP 2002). We are entitled to raise the jurisdictional question of standing sua sponte, which question we consider de novo. *Menk v. LaPaglia (In re Menk)*, 241 B.R. 896, 903 (9th Cir. BAP 1999).

4. The debtors' count seeking to determine the validity, amount, and priority of the Houston–Getsey lien under § 506 does not permit us to escape focusing on avoiding powers. Since the lien is plainly a valid consensual lien that supports the full amount of the debt and has priority over any later lien of equal dignity, § 506 offers no relief. As we shall see, the problem is that it is not perfected and, thus, is vulnerable to avoidance under the trustee's strong-arm power.

As we noted in *Laskin v. First Nat'l Bank (In re Laskin)*, 222 B.R. 872, 875 (9th Cir. BAP 1998):

Indeed, other than in subsection (c), here inapplicable, § 506 confers no standing on anyone. As we have previously stated, " § 506(d) provides the avoidance consequences of implementing a host of discrete powers conferred in other parts of the Code rather than acting as an avoiding power per se." *[Oregon v.] Lange [(In re Lange)]*, 120 B.R. [132], 135 [(9th Cir. BAP 1990)]. In *Dewsnup*, the Supreme Court implicitly adopted this analysis, stating that § 506(d)

## DISCUSSION

We must resolve the jurisdictional question of chapter 13 debtor standing to exercise trustee avoiding powers,[4] before addressing the substantive questions regarding the § 544 "strong arm" powers and Revised Article 9.

### I

The issue of the standing of chapter 13 debtors to exercise trustee avoiding powers for the benefit of the estate is an open question in this circuit.

■ Although the debtors' chapter 13 plan provides that they will prosecute the avoiding action and use net litigation proceeds to help fund the plan, a plan term does not create standing if none otherwise exists.

■ The contractual "assignment" of avoiding powers that the chapter 13 trustee executed does not suffice without explicit court approval.[5]

serves "the simple and sensible function of voiding a lien whenever a claim secured by the lien itself has not been allowed." *Dewsnup [v. Timm]*, 502 U.S. [410], 415–16[, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992)].

5. The court can authorize someone other than the trustee to sue in the trustee's name to exercise trustee avoiding powers for the benefit of the estate. 11 U.S.C. § 503(b)(3)(B); *Com–1 Info, Inc. v. Wolkowitz (In re Maximus Computers, Inc.)*, 278 B.R. 189, 197–98 (9th Cir. BAP 2002); *In re Godon, Inc.*, 275 B.R. 555, 565–66 (Bankr.E.D.Cal.2002) (constitutional, prudential, and statutory categories of standing). Similarly, trustees have been permitted to transfer or assign avoiding powers without reference to § 503(b)(3)(B). *Duckor Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.)*, 177 F.3d 774, 781–82 (9th Cir.1999); *Briggs v. Kent (In re Prof'l Inv. Props.)*, 955 F.2d 623, 625 (9th Cir.1992). In either event, however, the court must approve the transaction, and the trustee does not have authority to resolve such matters by way of simple contract without court approval.

■ Nor does the intervention of the chapter 7 trustee attendant to the conversion of the case that occurred after the judgment was entered necessarily cure any defect in standing.

■ The general rule regarding standing in the context of intervention is that intervention by one with standing does not retroactively cure a jurisdictional standing defect. *United States ex rel. Texas Portland Cement Co. v. McCord*, 233 U.S. 157, 163–64, 34 S.Ct. 550, 58 L.Ed. 893 (1914); *Fuller v. Volk*, 351 F.2d 323, 328 (3d Cir. 1965); *cf., Benavidez v. Eu*, 34 F.3d 825, 829 n. 4 (9th Cir.1994); 7C Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice & Procedure § 1917 (2d ed.1986). Thus, our jurisdiction is doubtful unless the chapter 13 debtors have independent standing to bring the avoiding action.[6]

### A

The problem of whether chapter 13 debtors can prosecute trustee avoiding actions for the benefit of the estate is a subject of considerable controversy.

No court of appeals has squarely decided whether chapter 13 debtors have standing to exercise trustee avoiding powers for the benefit of the estate. Lower courts are divided on the question. *See, e.g., Wood v. Mize (In re Wood)*, 301 B.R. 558, 561–63 (Bankr.W.D.Mo.2003) (cataloguing cases); Alan N. Resnick, Bankruptcy Law Manual § 10:8 (5th ed.2003); Keith M. Lundin, Chapter 13 Bankruptcy 3d §§ 52.1–53.1 (2000 & Supp.2002) ("Lundin").

In contrast, there is substantial agreement among the courts that § 522(h) confers standing on all debtors, including chapter 13 debtors, to assert trustee avoiding powers to recover property the debtor can exempt in whole or part.

11 U.S.C. § 522(h);[7] *DeMarah v. United States (In re DeMarah)*, 62 F.3d 1248, 1250 (9th Cir.1995); *accord Realty Portfolio, Inc. v. Hamilton (In re Hamilton)*, 125 F.3d 292, 295–98 (5th Cir.1997); Lundin § 53.1. Any such recovery is preserved for the benefit of the debtor to the extent of the available exemption, with the balance preserved for the benefit of the estate. 11 U.S.C. § 522(i)(2). Thus, the debtor can attack a $1 million avoidable transfer under § 522(h) but only if there is some amount of the recovery—even $1.00—that the debtor can exempt.

Even where there is the hook of at least $1.00 of exempt proceeds, however, the § 522(h) authorization to exercise trustee

---

**6.** While one could argue that the application of this federal intervention doctrine ought to vary depending upon whether the standing in question is constitutional standing, on the one hand, or merely prudential or statutory standing on the other, the federal cases do not definitively recognize such a distinction. The *Texas Portland Cement* case involved a question of statutory standing; so does this appeal. Thus, we are left with enough of a prospect that the general rule applies that we need to assess the standing of the pre-conversion plaintiffs.

**7.** That section provides:

(h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

(2) the trustee does not attempt to avoid such transfer.

11 U.S.C. § 522(h).

The reference to § 522(g)(1) incorporates requirements that the transfer have been involuntary and that the debtor not have concealed the property. 11 U.S.C. § 522(g)(1).

avoiding powers is of no utility where the original transfer by the debtor was either concealed or, as here, voluntary. 11 U.S.C. § 522(g)(1). In such cases, trustee avoiding powers can only be exercised on some other basis.

The rub in searching for a basis for standing to exercise avoiding powers in chapter 13 is that the text of chapter 13 does not say in so many words that anybody has authority to exercise trustee avoiding powers. Although recoveries on account of avoided transfers are always for the benefit of the estate to the extent not exempt and constitute property of the estate, chapter 13 does not expressly authorize anyone—neither chapter 13 trustees nor chapter 13 debtors—to exercise trustee avoiding powers.

The question then becomes whether the Bankruptcy Code can be construed to confer avoiding-power standing on chapter 13 debtors. If so, then debtors have "statutory standing" conferred by Congress, which has unquestioned authority to designate which persons may exercise avoiding powers it created. *Godon,* 275 B.R. at 565; *accord, P.R.T.C.,* 177 F.3d at 780–81.

If there is no statutory standing, then the question becomes whether there is nevertheless third-party "non-statutory standing" available for use by chapter 13 debtors who would create gains for the estate. *P.R.T.C.,* 177 F.3d at 781; *Prof'l Inv. Props.,* 955 F.2d at 625; *Godon,* 275 B.R. at 565.

### B

The arguments for and against chapter 13 debtor statutory standing boil down to the fundamentally philosophical choices between narrow and broad construction of statutes.

### 1

Courts that reject chapter 13 debtor standing to exercise trustee avoiding powers rely primarily upon the lack of explicit statutory authority and do not defer to legislative history in the face of what they view as plain statutory language.

The basic analysis is that the list in 11 U.S.C. § 1303 of the powers that chapter 13 debtors hold exclusive of the trustee refers only to some of the powers under § 363 to deal with property of the estate and does not include avoiding powers. *E.g., LaBarge v. Benda (In re Merrifield),* 214 B.R. 362, 364–65 (8th Cir. BAP 1997); *Wood,* 301 B.R. at 562; *In re Redditt,* 146 B.R. 693, 701 (Bankr.S.D.Miss.1992). The inference is that chapter 13 debtors hold no powers concurrently with the trustee.

Such courts note that "plain language" decisions under chapters 7, 11, and 12 generally hold that standing to exercise trustee avoiding powers is limited to the trustee or the person (chapter 11 debtor-in-possession or chapter 12 debtor) designated by the Bankruptcy Code to perform the duties of the trustee. *Merrifield,* 214 B.R. at 364–65; *Wood,* 301 B.R. at 562.

The argument is that since Congress showed that it knew how to confer standing on debtors in chapters 11 and 12, its omission to do so in chapter 13 reflects a choice to deny such standing to chapter 13 debtors. *In re Henderson,* 133 B.R. 813, 816–17 (Bankr.W.D.Tex.1991); *In re Driver,* 133 B.R. 476, 480 (Bankr.S.D.Ind.1991); *Bruce v. RepublicBank–South Austin (In re Bruce),* 96 B.R. 717, 720–21 (Bankr. W.D.Tex.1989).

Some courts draw a negative inference from the existence of the limited grant of standing under § 522(h) to all debtors to exercise the trustee's avoiding powers for their own account so as to avoid certain transfers of exempt property. Such courts

find § 522(h) sufficiently inconsistent with general avoiding power that it constitutes an implicit denial of other avoiding power standing to chapter 13 debtors. *Wood,* 301 B.R. at 562.

Another part of the analysis is that the basic avoiding powers under §§ 544 through 549 limit standing exclusively to the trustee because they mention only the trustee. *Merrifield,* 214 B.R. at 365.[8] It is agreed, however, that this "exclusive" power extends to the chapter 11 debtor in possession and the chapter 12 debtor because such debtors are authorized by statute to perform relevant duties of a chapter 11 or chapter 12 trustee. 11 U.S.C. §§ 1107(a) & 1203; *Merrifield,* 214 B.R. at 365.

This school of thought draws further comfort from the Seventh Circuit's obiter dictum that "[s]ection 548 unequivocally limits the avoidance power to the trustee." *Cable v. Ivy Tech St. College,* 200 F.3d 467, 474 (7th Cir.1999).

The response to assertions that legislative history supports an expansive reading is that the statute is not ambiguous. Thus, "by the statute's own terms, only the trustee has standing to exercise the strong-arm avoidance powers [and][l]egislative history, especially floor comments, may augment but may not amend the statute's straightforward language." *Bruce,* 96 B.R. at 721. This is the standard analysis of narrow statutory construction.

2

Courts that favor chapter 13 debtor standing focus on the economic realities of chapter 13, including the limited role of chapter 13 trustees, and emphasize anoma-

lies that would result if viable avoiding actions were allowed to linger.

In support of inferring powers that are not explicitly stated on the face of the statute, these courts regard the statute as ambiguous and emphasize legislative history statements urging that chapter 13 should be construed expansively.

They reason that the designation in § 1303 of certain powers that debtors hold exclusive of the trustee does not mean that there are no other powers that the debtor holds concurrently with the trustee. Thus, it is pointed out that the legislative history behind § 1303 explains that the list of exclusive powers "does not imply that the debtor does not also possess other powers concurrently with the trustee." 124 CONG. REC. H11106 (daily ed. Sep. 28, 1978); *id.,* S. 17423 (daily ed. Oct. 6, 1978); *Hamilton,* 125 F.3d at 296 (summarizing arguments).

Likewise, it is noted that the same legislative history statement added, "although [§ 323–authorizing trustees to sue and be sued] is not specified in [§ ]1303, certainly it is intended that the debtor has the power to sue and be sued." 124 CONG. REC. H11106; *id.,* S. 17423; *Hamilton,* 125 F.3d at 296; *Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1209 n. 2 (3d Cir.1991).

The lack of a case-specific compensation scheme for chapter 13 trustees that provides an economic incentive for trustees to maximize the value of estates is also regarded as significant. *Einoder v. Mt. Greenwood Bank (In re Einoder),* 55 B.R.

---

**8.** *Merrifield* incorrectly invoked one of our decisions as support for its trustee-only reading of § 548. In *Hansen v. Finn (In re Curry & Sorensen),* 57 B.R. 824, 828 (9th Cir. BAP 1986), we did *not* hold that § 548 may be asserted *only* by a trustee. Rather, we held

that a chapter 11 creditor must obtain the court's prior permission before suing under § 548 and must do so in the name of the trustee. We recently reiterated and amplified that ruling. *Maximus Computers,* 278 B.R. at 197–98.

319, 322–24 (Bankr.N.D.Ill.1985) (Ginsberg, J.).

The ultimate focus is on practicality of chapter 13 practice or, as Judge Ginsberg put it, "[t]o say the trustee is the representative of the Chapter 13 estate is to raise legal formalism over reality." *Einoder*, 55 B.R. at 323; *accord, Ottaviano v. Sorokin & Sorokin (In re Ottaviano)*, 68 B.R. 238, 240 (Bankr.D.Conn.1986).

The theme is one of making the chapter 13 process function as Congress intended.

### C

◼ The gap between the entrenched interpretive camps is bridged by applying the Supreme Court's "holistic" approach to construing the Bankruptcy Code and looking beyond the provisions explicitly allocating powers among debtors and trustees in the various chapters. *United Savings Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (Scalia, J.).

A review of the whole chapter 13 statutory scheme narrows the number of permissible constructions of the allocation of debtor and trustee powers that comport with the rest of the law.[9]

### 1

An inventory of pertinent Bankruptcy Code provisions without reference to legislative history reveals a statutory picture of debtor control of property of the estate under court supervision, property-of-estate status for funds recovered under avoiding actions, standards for plan confirmation, and possibility that plan could be confirmable only if avoiding actions are prosecuted.

First, the chapter 13 debtor remains in possession of all property of the estate during the case. 11 U.S.C. § 1306(b).[10]

Second, the duties of chapter 13 trustees are defined in part by reference to 11 U.S.C. § 704, which delineates duties of chapter 7 trustees. Chapter 13 trustees have seven of the nine chapter 7 trustee duties, with an eighth assigned to debtors who are engaged in business. 11 U.S.C. §§ 1302(b)(1) & 1304(c).[11]

---

9. "Holistic" construction involves the following analysis:

> [V]iewed in the isolated context of § 362(d)(1), the phrase could reasonably be given the meaning petitioner asserts. Statutory construction, however, is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme—because the same terminology is used elsewhere in a context that makes its meaning clear or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law. That is the case here. Section 362(d)(1) is only one of a series of provisions in the Bankruptcy Code dealing with the rights of secured creditors. The language in those other provisions, and the substantive dispositions that they effect, persuade us that the "interest in property" protected by § 362(d)(1) does not include a secured party's right to immediate foreclosure.

*United Savings Ass'n*, 484 U.S. at 371, 108 S.Ct. 626 (citations omitted).

10. The pertinent provision is:

> (b) Except as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate.

11 U.S.C. § 1306(b).

11. The chapter 13 trustee § 704 duties are:

> (b) The trustee shall—(1) perform the duties specified in sections 704(2), 704(3), 704(4), 704(5), 704(6), 704(7), and 704(9) of this title;

11 U.S.C. § 1302(b)(1).

In addition, a debtor engaged in business must make the reports of business operations required by § 704(8):

> (c) A debtor engaged in business shall perform the duties of the trustee specified in section 704(8).

11 U.S.C. § 1304(c).

The one chapter 7 trustee duty that is omitted from the duties of the chapter 13 trustee or debtor is the § 704(1) duty to "collect and reduce to money the property of the estate." This is the duty that obliges chapter 7 trustees to pursue avoiding actions.

Third, chapter 13 debtors have, exclusive of the trustee, the rights and powers of a trustee to deal with "property of the estate" (after notice and a hearing) not in the ordinary course of business. 11 U.S.C. § 1303.[12] Chapter 13 debtors engaged in business also have, exclusive of the trustee, the rights and powers of a trustee to use property of the estate in the ordinary course of business and to obtain credit. 11 U.S.C. § 1304(b).[13]

Fourth, the chapter 13 "property of the estate" that, as noted, remains in the debtor's possession, includes all of the property designated by 11 U.S.C. § 541 that existed when the petition was filed and that is acquired postpetition before the case is closed, dismissed, or converted and in-cludes postpetition personal service in-come. 11 U.S.C. § 1306(a).

It follows that chapter 13 "property of the estate" includes interests in property that the trustee recovers under the trustee avoiding powers. 11 U.S.C. § 541(a)(3).[14]

Fifth, unlike chapter 11, only the debtor can propose or modify a plan before confir-mation. 11 U.S.C. §§ 1321 & 1323(a).

Under the so-called "best interest" test for chapter 13 plan confirmation, the plan must provide for distributions under it on account of allowed unsecured claims that are of a value of at least what would be paid on unsecured claims in a hypothetical chapter 7 liquidation on the effective date of the plan. 11 U.S.C. § 1325(a)(4).[15]

The source of funding for the plan must include the debtor's earnings or other fu-ture income. 11 U.S.C. § 1322(a)(1).[16] In addition, property of the estate or proper-ty of the debtor is also permitted to be

---

**12.** The full section ("Rights and powers of debtor") provides:

> Subject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and pow-ers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363($l$).

11 U.S.C. § 1303.

**13.** That subsection provides:

> (b) Unless the court orders otherwise, a debtor engaged in business may operate the business of the debtor and, subject to any limitations on a trustee under sections 363(c) and 364 of this title and to such limitations or conditions as the court pre-scribes, shall have, exclusive of the trustee, the rights and powers of the trustee under such sections.

11 U.S.C. § 1304(b).

**14.** The § 541 "property of the estate" in-cludes:

> (3) Any interest in property that the trus-tee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.

> (4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.

11 U.S.C. § 541(a)(3) & (4).

**15.** This essential element for confirmation re-quires that:

> (a)(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unse-cured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

11 U.S.C. § 1325(a)(4).

**16.** The requirement is:

> (a) The plan shall—
> (1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervi-sion and control of the trustee as is neces-sary for the execution of the plan.

11 U.S.C. § 1322(a)(1).

used as a source of funding the plan. 11 U.S.C. § 1322(b)(8).[17]

2

That the statutory structure outlined above contemplates chapter 13 debtor standing to prosecute avoiding actions may be seen by considering a hypothetical situation in which the debtor has only $30,000 of future income (and no other property) to fund a plan and in which the debtor made a voluntary transfer that a trustee unquestionably could avoid, recovering a net of $100,000.

The best interest test of § 1325(a)(4) would forbid confirmation of a plan that pays unsecured creditors less than what they would receive in a chapter 7 liquidation. In a chapter 7 case, the trustee would have $100,000 (less expenses) to distribute to creditors. Thus, the debtor, who has disposable future income of only $30,000 (and no other source of funds), would be incapable of proposing a confirmable plan without the avoidance of the $100,000 transfer.

It would be an odd system that would require a chapter 13 debtor to depend upon the recovery of an avoidable transfer in order to have a confirmable plan but not permit the debtor to avoid the transfer.

■■■ The key question is whether a chapter 13 debtor holds trustee powers *concurrent* with the trustee. The statute at section § 1303 names trustee powers that debtors hold *exclusive* of the trustee but is silent with respect to other powers.

In view of the structure of the rest of the chapter 13 system in which the debtor retains possession of all property of the estate, including the proceeds of avoiding actions, and is unable to use such property without court permission, we think that the construction of § 1303 most consistent with the whole of the Bankruptcy Code is that, by listing powers the debtor holds exclusive of the trustee, it leaves the debtor with other powers that may be exercised concurrent with the trustee.

Nor does this conclusion create an unacceptable opportunity for mischief. If the transfer were to be avoided by the debtors, the funds recovered would, as a matter of law, be "property of the estate" and would be preserved for the benefit of the estate. 11 U.S.C. §§ 541(a)(3) & 551. The debtors are normally in possession of all property of the estate throughout the life of the chapter 13 case. 11 U.S.C. § 1306(b).

The debtors, however, cannot do anything with the property of the estate in their possession without permission from the court. This conclusion follows from the fact that § 1303 gives debtors, "exclusive of the trustee, the rights and powers of a trustee" under § 363(b) with respect to the use of property outside the ordinary course of business, the exercise of which usually requires court approval. 11 U.S.C. §§ 363 & 1303. A debtor engaged in business also has, "exclusive of the trustee, the rights and powers of the trustee" to use property of the estate in the ordinary course of business under § 363(c) and to obtain credit under § 364. 11 U.S.C. §§ 364 & 1304(b).

The reference to § 363(b) in § 1303 is crucial with respect to the question of debtor standing to avoid transfers. One concern that immediately arises is whether such use of avoiding powers would transmogrify their purpose by allowing the debtor to pocket proceeds of avoiding ac-

---

17. That authorization provides:
 (b) ... the plan may—... (8) provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor;
11 U.S.C. § 1322(b)(8).

tions without there being any benefit to the estate or creditors. Here, the net proceeds are committed to the plan.

By subjecting the debtor to the trustee's rights and duties under § 363(b), the Bankruptcy Code constrains a debtor's ability to utilize proceeds of avoiding actions by imposing a requirement that they be used only after "notice and a hearing," which subjects such matters to the control of the court. Efforts by a debtor to exempt property that could not have been recovered under § 522(h) would have to run the gauntlet of the process for objecting to exemptions and overcome the argument that § 522(h) indicates that no exemption in recoveries is permitted with respect to property that could not be avoided under § 522(h).

Nor does recovery from a transferee under avoiding powers unfairly deprive the transferee of rights against the estate. Upon recovery, the transferee has a claim that is treated as a prepetition claim. 11 U.S.C. § 502(h). It is timely to file such a proof of claim within 30 days after the judgment becomes final. Fed. R. Bankr.P. 3002(c)(3). The debt will not be discharged unless it is "provided for by the plan." 11 U.S.C. § 1328(a); *Einoder*, 55 B.R. at 323 n. 9. The transferee, as the holder of an allowed unsecured claim, could even request modification of an existing confirmed plan to provide for payment of the recovery to creditors. 11 U.S.C. § 1329(a); *Powers v. Savage (In re Powers)*, 202 B.R. 618, 622–23 (9th Cir. BAP 1996), *following In re Witkowski*, 16 F.3d 739, 744–46 (7th Cir.1994). Moreover, good faith transferees are protected by the § 550(e) statutory lien on the property recovered to secure the lesser of cost or value of transferee improvements. 11 U.S.C. § 550(e).

This analysis is not affected by the fact that confirmation of a plan ordinarily "vests all of the property of the estate in the debtor." 11 U.S.C. § 1327(b).[18] Although there is confusion over whether the parallel "vesting" provisions in chapters 11, 12 and 13 actually terminate the "estate" or merely leave it as an empty shell, the concept of vesting must be construed in harmony with § 1306(a)(1), which provides that "property of the estate" in chapter 13 includes property acquired postpetition but "before the case is closed, dismissed, or converted to a case under chapter 7." 11 U.S.C. § 1306(a)(1); *cf., id.* § 348(f) (property of estate in case converted from ch. 13); *Pioneer Liquidating Corp. v. United States Tr. (In re Consol. Pioneer Mtge. Entities)*, 264 F.3d 803, 807–08 (9th Cir.2001) (§ 1141(b) vesting), *aff'g* 248 B.R. 368, 382–83 (9th Cir. BAP 2000). Thus, vesting does not affect continuing status of property as chapter 13 "property of the estate" during the interval between plan confirmation and closing, dismissing, or converting the case.

Nor is it a problem that chapter 13 debtors have a right to dismiss the case or convert it to chapter 7. 11 U.S.C. § 1307. Property of the estate retains such status in the converted case under the control of the chapter 7 trustee. 11 U.S.C. § 348(f). If the case is dismissed, the avoided transfer is reinstated and the property returned to the transferor. 11 U.S.C. § 349(b).

While it may be objected that there is a potential for trouble if a chapter 13 trustee and a debtor were to disagree about pursuing a particular avoiding action, the answer is that the combination of the court's

---

18. The statute provides:
(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
11 U.S.C. § 1327(b).

control over the use of "property of the estate" and its inherent authority to supervise bankruptcy cases give it ample power to police dysfunction.

In the end, the risk of mischief from debtor exercise of avoiding powers is eliminated by the provisions limiting a debtor's ability to use property of the estate without permission from the court. Thus, the terms of the Bankruptcy Code, itself, support the conclusion that chapter 13 debtors may exercise trustee avoiding powers concurrently with the trustee.

### 3

If we regard § 1303 as ambiguous and look at legislative history for guidance, a strong case for debtor standing to assert trustee avoiding powers becomes a compelling case.

At the time of enactment, the floor managers in the House of Representatives and the Senate explained that the designation in § 1303 of rights and powers that chapter 13 debtors have exclusive of the trustee "does not imply that the debtor does not also possess other powers concurrently with the trustee" and that "[f]or example although [§ 323] is not specified in section 1303, certainly it is intended that the debtor has the power to sue and be sued." 124 CONG. REC. H11106; *id.* S. 17423.

Since the trustee does not personally assume the private rights of the debtor, the power to "sue and be sued" could only refer to the estate. Thus, the floor statements confirm that the drafters of the Bankruptcy Code contemplated that chapter 13 debtors would be able to exercise trustee powers concurrent with the trustee with respect to powers that were not exclusively allocated to debtors.

### 4

Our conclusion that a holistic construction of the Bankruptcy Code supports the standing of chapter 13 debtors to exercise trustee avoiding powers without first obtaining special permission from the court draws support from the approach that various courts of appeals have taken with respect to analogous aspects of chapter 13.

The courts of appeals that have considered the problem of how to construe the allocation of duties as between debtors and trustees have come down in favor of broad construction, citing Bankruptcy Code legislative history that encourages such a view.

The Fifth Circuit determined that the chapter 13 trustee is empowered to exercise the debtor's avoiding powers under § 522 even though the chapter 13 trustee powers and duties enumerated at § 1302 do not explicitly authorize them to avoid any transfers. *Tower Loan of Mississippi, Inc. v. Maddox (In re Maddox),* 15 F.3d 1347, 1353–56 (5th Cir.1994).

*Maddox* rejected the plain language argument against standing because "a chapter 13 trustee's authority to act—and hence his standing—is derived from more than one section of the Bankruptcy Code." *Id.,* at 1354. Relying on historical analysis of the evolution of policy from chapter XIII under the Bankruptcy Act of 1898 to the current chapter 13, legislative history, and implications of various sections of the statute, it concluded that the trustee's power to examine claims under § 1302(b)(1) implied the existence of a power to avoid liens so that creditors who should be unsecured would not incorrectly be treated as secured. *Id.* at 1355–56.

The Ninth Circuit relied on *Maddox* in reasoning that a chapter 13 trustee has standing to object to plan confirmation based on inappropriate treatment of a secured creditor even though § 1325(a)(5) makes no provision for a trustee to object to plan confirmation on that ground. *Andrews v. Loheit (In re Andrews),* 49 F.3d

1404, 1407–09 (9th Cir.1995). The gist of its reasoning was that one must construe the Bankruptcy Code as a whole and without narrow focus on a single provision. *Id.*

The Second, Third, and Seventh Circuits, as well as a district court in this circuit, have held that chapter 13 debtors, unlike chapter 7 debtors, have standing to prosecute nonbankruptcy causes of action owned by the estate. *Cable,* 200 F.3d at 473; *Olick v. Parker & Parsley Petroleum Co.,* 145 F.3d 513, 515–16 (2d Cir.1998); *Maritime Elec. Co.,* 959 F.2d at 1209 n. 2; *Donato v. Metro. Life Ins. Co.,* 230 B.R. 418, 425–26 (N.D.Cal.1999). The Second Circuit directly relied on the legislative history, noted above, indicating that debtors and trustees may concurrently possess powers not named in § 1303. *Olick,* 145 F.3d at 516. Although these cases treated bankruptcy causes of action as potentially distinguishable, it is difficult to articulate a principled difference between standing to recover on bankruptcy and nonbankruptcy causes of action.

The message in the tea leaves left by these decisions is that chapter 13 is to be construed broadly.

Hence, we conclude that the chapter 13 debtors had statutory standing to exercise the trustee avoiding power as provided in their chapter 13 plan as a means to fund the plan.

5

If our conclusion that the chapter 13 debtors had statutory standing to exercise trustee avoiding powers were to be incorrect, we are nonetheless persuaded that the chapter 13 debtors had third-party non-statutory standing.

The test for third-party standing requires: (1) "injury in fact" to the debtors; (2) close relationship between debtors and trustee; and (3) hindrance to the debtors' ability to protect themselves. *Powers v. Ohio,* 499 U.S. 400, 411, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Wasson v. Sonoma County Jr. Coll.,* 203 F.3d 659, 663 (9th Cir.2000).

It is apparent that all three requirements are satisfied here. The debtors' need to use proceeds of the avoiding action to fund their chapter 13 plan constitutes "injury in fact." The interests of the debtors and the trustee in avoiding the transfer are essentially identical. Since debtors who need the proceeds of a recovery to fund a chapter 13 plan have greater incentives than the chapter 13 trustee to advocate effectively,[19] their ability to protect their interests would be hindered if they were required to rely on the trustee.

This comports with the *Wright, Miller & Cooper* treatise's view of the underlying concepts: (1) Congress regulated the relationship between the estate and holders of defective security interests and avoidable transfers; (2) the third-party chapter 13 debtor is better able to be an effective advocate than the nonparty chapter 13 trustee; and (3) there is little danger of divergence between the interests of debtor and trustee. 13 FEDERAL PRACTICE & PROCEDURE 2d § 3531.9, at 564; *cf., Godon,* 275 B.R. at 565.

Thus, although we think the statute confers standing, the chapter 13 debtors also had third-party non-statutory standing.

II

Oregon law controls the merits of the appeal because the transaction that is argued to have been either an equitable assignment or the creation of an automatical-

---

**19.** The *Lundin* treatise explains: "Chapter 13 trustees rarely seek to avoid transfers of property. There is little incentive for the trustee to pursue such actions." LUNDIN, § 60.1, at 60–3.

ly-perfected "payment intangible" under Revised Article 9 of the UCC occurred while the Cohens were Oregon residents. The bankruptcy court so ruled, and also ruled that California law would yield the same result; that ruling has not been questioned on appeal.

The bankruptcy court determined that appellants' interest in the proceeds of the Cohens' tort action would be treated as unsecured in the chapter 13 case because, first, the assignment was not an equitable assignment that terminated the debtors' interest in the funds and, second, there was no compliance with the requirement of Revised Article 9 that there be a filed financing statement. In the latter ruling, it rejected appellants' theory that the interest involved a "payment intangible" or some other form that, under Revised Article 9, is automatically perfected without need for a filed financing statement. We address the issues in order.

## A

Appellants argue that Note 2 was a pre-petition equitable assignment that transferred ownership of the litigation proceeds and eliminated the Cohens' rights in them. Under this theory, the proceeds would not be property of the estate and could not be the subject of a security interest.

Under Oregon law, the intent of the parties governs whether a transaction constitutes an assignment that transfers ownership or, instead, creates a security interest. *Sticka v. Mellon Bank (DE) Nat'l Assoc. (In re Martin),* 167 B.R. 609, 616 (Bankr.D.Or.1994).

Oregon law allocates to the purported assignee the burden to prove "a present intent to assign and an intent to receive the assignment" based on all the circumstances surrounding the transaction. *Id.*

An assignment qualifies as an equitable assignment under Oregon law if valuable consideration is given by the assignee for a right that does not exist at that time, the assignment addresses a specific fund, and the assignor retains no control over an identifiable fund, no authority to collect, and no power of revocation. *Id.*

In *Martin,* the bankruptcy court in Oregon concluded that there was an equitable assignment when the debtors took part in the so-called Refund Anticipation Loan Program H & R Block had set up in conjunction with Mellon Bank ("Mellon"). In doing so, the debtors assigned to Mellon their right to a federal income tax refund. The IRS was sent official IRS Form 8453 directing it to send the refund to an irrevocable account at Mellon in the debtors' names, but over which the debtors had no control. Mellon then loaned the debtors the net amount of their anticipated refund after deducting account and loan fees. After the debtors filed a chapter 7 bankruptcy, the IRS electronically transferred the debtors' refund to the Mellon account, which funds Mellon immediately applied to extinguish the debt and closed the account. The bankruptcy court rejected the trustee's challenge that the transaction was an unauthorized postpetition transfer of estate property, ruling instead that it was an equitable assignment. *Id.* at 611–12.

Appellants rely on *Martin* and contend that the express language of Note 2 evidences an intent to "presently and actually assign a portion of the proceeds to appellants." [20]

---

20. The appellants did assert in this appeal that there is an unresolved genuine issue of material fact regarding intent that precluded summary judgment. When asked at oral argument they conceded that there would be nothing of a factual nature to be accom-

Debtors argue that the *Martin* transaction is distinguishable because Mellon accepted the assignment of the tax refund as full satisfaction of the debt. There was no promissory note and no agreement to pay interest. *Id.* at 617–18. The entire obligation was extinguished when Mellon received the refund.

■■■ We agree with debtors and the bankruptcy court that *Martin* is distinguishable. Here, the loan was due one year from the date of execution regardless of whether it came from the settlement or some other source. If no settlement transpired, the money was still due. The settlement was just one potential source of payment. To ensure debtors would use any settlement proceeds to pay off the loan balance, the parties signed a lien agreement. The lien agreement authorized debtors' attorney to pay the total amount due under the promissory note to appellants. This was to secure appellants' right to repayment under the promissory note from the settlement proceeds.

Rather than constituting an equitable assignment, the Note 2 transaction created a security interest, which Oregon law defines as an "interest in personal property or fixtures which *secures payment or performance of an obligation.*" OR. REV. STAT. § 71.2010(37)(a) (emphasis added).

Debtors were obligated on a note to appellants. The amount owed was due regardless of whether debtors recovered on the tort claim. The potential settlement was provided as security for the note. Further, the parties signed a lien agreement for the express purpose of securing payment or performance of that obligation. Note 2 specified that the debt could be paid before the end of the one-year term, "upon borrower receiving money from Insurance Settlement." If the litigation recovery was less than the debt, the debtors owed the balance.

In contrast, the *Martin* loan was in the amount of the anticipated tax refund and was to be satisfied solely through the receipt of that refund. No separate agreement made debtors ultimately liable for any unpaid balance. No separate lien agreement gave the bank a right to the tax refund. Rather, there was a true assignment transferring ownership of the right to the refund. That was not the situation presented in this case.

Thus, the bankruptcy court correctly concluded that the parties intended to create a security interest in the settlement proceeds and did not intend to make an equitable assignment.

### B

Appellants contend that if the transaction with appellants created a security interest, then the security interest either was not subject to Revised Article 9 or was automatically perfected under UCC § 9–309 as an assignment either of an "account" or a "payment intangible." [21]

■■■ The bankruptcy court held that this particular transaction is neither outside the scope of, nor within an exception to the filing requirements of, Article 9. We agree.

■■■ Revised Article 9, which expanded the scope of the original Article 9, applies to "a transaction, *regardless of form,* that creates a security interest in personal property or fixtures by contract[.]" OR. REV. STAT. § 79.0109(1)(a) (emphasis added). Oregon's version of original Article 9 also covered security interests created by contract, including by assignment. *See*

---

plished if we were to remand. Accordingly, any issue in this respect is waived.

**21.** Oregon's UCC is codified at OR. REV. STAT. § 79.0101 *et seq.*

former OR. REV. STAT. 79.1020(2) (repealed by Or. Laws 2001, ch. 445, § 187); *Great W. Nat'l Bank v. Hill (Estate of Hill),* 27 Or.App. 893, 902, 557 P.2d 1367 (1976).

Under Oregon law, a security interest is an "interest in personal property or fixtures which secures payment or performance of an obligation." OR. REV. STAT. § 79.2010(37)(a). An interest in a personal injury cause of action is a general intangible which means "any personal property, including things in action." OR. REV. STAT. § 79.0102(pp).[22]

A "payment intangible," which is a subset of a general intangible, was added to the UCC in 2001, and means "a general intangible under which the account debtor's principal obligation is a monetary obligation." OR. REV. STAT. § 79.0102(iii).

The assignment of an account or a payment intangible escapes the clutches of Revised Article 9 if it is made to an "assignee in full or partial satisfaction of a pre-existing indebtedness." OR. REV. STAT. § 79.0109(4)(g). That escape is not available to appellants here because the transaction was not made in full or partial satisfaction of pre-existing indebtedness.

If a transaction is within the scope of Article 9 and also qualifies as either an "account" or a "payment intangible," then the assignment is perfected upon attachment—i.e. automatically perfected without filing a financing statement—if the assignment does not "transfer a significant part of the assignor's outstanding accounts or payment intangibles[.]" OR. REV. STAT. § 79.0309(2).

 The bankruptcy court correctly concluded that the expectation in the tort action did not constitute an "account" because the *sine qua non* of an account is

the existence of a monetary obligation that is not contingent. OR. REV. STAT. § 79.0102(b).

The question then becomes whether the expected proceeds from the lawsuit were a "payment intangible" on the theory they comprise a monetary obligation owed by an account debtor on a general intangible.

In arguing for the existence of a "payment intangible," appellants rely on Official Comment (5)(d) to Revised UCC § 9–102:

> In classifying intangible collateral, a court should begin by identifying the particular rights that have been assigned. The account debtor (promisor) under a particular contract may owe several types of monetary obligations as well as other, nonmonetary obligations. If the promisee's right to payment of money is assigned separately, the right is an account or payment intangible, depending on how the account debtor's obligation arose.

The bankruptcy court was not persuaded by this general statement, relied on the more specific analysis set forth in Official Comment 15 to Revised UCC § 9–109, and ruled that appellants' interest in the settlement proceeds was a general intangible but not a payment intangible: "once a claim arising in tort has been settled and reduced to a contractual obligation to pay, the right to payment becomes a payment intangible and ceases to be a claim arising in tort."

The converse of Official Comment 15 is that, before settlement, the right is a claim arising in tort and not a payment intangible. As the claim arising in tort had been neither reduced to judgment nor settled when Note 2 was executed, the court held there was not a payment intangible.

**22.** One named exception to the definition, not applicable here, is a *commercial* tort claim.

904

Citing no authority, appellants argue that Comment 15 does not apply because it is limited to situations in which there is a security interest in a tort claim as proceeds of the original security agreement. We disagree.

For a payment intangible to exist, there must be a "monetary obligation." When the debtors pledged to appellants their interest in potential settlement proceeds, the alleged tortfeasors had no obligation to pay debtors anything. At that point there had been neither a settlement nor a judgment. Thus, Comment 15 squarely applies. Until there is a contractual obligation to pay a judgment, a tort claim cannot be a payment intangible because the required "monetary obligation" is lacking.

Thus, the assignment by the Cohens to appellants was not an assignment of a payment intangible: there was no existing monetary obligation. However, even if it were an assignment of a payment intangible, it did not qualify for automatic perfection pursuant to Or. Rev. Stat. § 79.0309(2) because it was an assignment of all or a significant part of the Cohen's payment intangibles.

Nor, preferring substance over form and treating the assignment to appellants as an assignment from the investment partnership, does Or. Rev. Stat. § 79.0310(3) save the day. That section provides that an assignment of an already perfected security interest remains perfected in the hands of the assignee. Because the Investment Partnership's security interest was not perfected by filing or otherwise, appellants' security interest is not perfected under that section either.

Therefore, the type of security interest created in this situation is a general intangible that does not qualify as a account or payment intangible. *Hill,* 27 Or.App. at 902, 557 P.2d 1367. Because it is neither an account nor a payment intangible, it is subject to the filing requirements of Article 9. Or. Rev. Stat. § 79.0309(2).

Appellants raise one additional point in the course of arguing that "an assignment may operate to transfer a security interest." It appears that appellants are arguing that an existing security interest may be assigned without affecting the perfected status of the security interest.[23] Or. Rev. Stat. § 79.0310(3). While that is an accurate statement of law, it has no bearing on this appeal. If the transaction were to be construed as an assignment of a security interest from the Investment Partnership to Houston and Getsey, the fact remains that the Investment Partnership had not filed a financing statement and was, itself, unperfected.

■ In sum, the transaction created a security interest governed by Revised Article 9 and did not qualify for any of the automatic perfection provisions. Thus, the absence of a filed UCC financing statement has the consequence that appellants' security interest in the settlement proceeds was unperfected and vulnerable to § 544 "strong-arm" avoidance.

The bankruptcy court's analysis was craftsman–like and correct.

## CONCLUSION

The chapter 13 debtors had standing to prosecute the action based on the trustee's § 544 "strong arm" powers in which the bankruptcy court correctly determined that appellants' interest in the settlement proceeds was neither an equitable assignment nor a payment intangible and therefore was subject to the filing requirements

**23.** Appellants' assertion that the bankruptcy court treated assignments and security interests as mutually exclusive is not an accurate statement of the court's analysis.

of Revised Article 9 of the UCC. Because appellants did not file a UCC financing statement, the bankruptcy court properly avoided appellants' security interest in the settlement proceeds pursuant to § 544(a). We AFFIRM.