**UNITED STATES of America,
Appellant,**

v.

**SAMEL REFINING CORPORA-
TION et al.**

**No. 19322.**

United States Court of Appeals,
Third Circuit.

Argued Oct. 7, 1971.

Decided June 2, 1972.

Janet R. Spragens, Dept. of Justice, Tax Div., Washington, D. C., for appellant.

Allen J. Levin, Goodis, Greenfield, Narin & Mann, Philadelphia, Pa., for appellee.

Before KALODNER, STALEY and ADAMS, Circuit Judges.

## OPINION OF THE COURT

STALEY, Circuit Judge.

The United States of America brought this action to foreclose Federal tax liens upon a sum of money deposited with the defendant, First Federal Savings and Loan Association.

The facts are not in dispute and were stipulated in the district court. In 1961, Samel Refining Corporation ("Samel"), the taxpayer, entered into a five-year lease with Bernstein & Bernstein Realty Corporation for certain premises in Philadelphia, Pennsylvania. Pursuant to a provision in the lease, the sum of $9,000 was deposited in a special escrow account with the First Federal Savings and Loan Association.

On March 12, 1965, Samel entered into a security agreement with E. F. Drew & Co., Inc. ("Drew"). Drew undertook to purchase raw materials for Samel's operations, upon Samel's undertaking to repurchase such raw material

and granting to Drew a continuing security interest in all of Samel's existing accounts receivable and contract rights, together with the proceeds thereof as security for Samel's obligation to pay Drew the purchase price of the raw materials.

In April of 1965, following the execution of the security agreement, Drew perfected its security interest by filing financing statements with the various appropriate state and county officers. These statements covered, inter alia, all existing and hereafter acquired accounts receivable and contract rights, together with the proceeds thereof.

In July and August of 1965, the Government filed tax liens against Samel.

In December of 1965, Samel defaulted in the performance of its obligations under the lease; however, Bernstein was able to make a new lease for the premises without any loss and has disclaimed any right to the $9,000 security deposit. This fund is claimed by both Drew and the United States. Each claim exceeds $9,000, and the successful party will consume the entire fund.

Since the facts were not in dispute, the parties filed cross-motions for summary judgment. The district court, 313 F. Supp. 684, ruled in favor of Drew, and the Government brought this appeal.

■ In the district court the sole issue presented and discussed involved the determination of whether the $9,000 deposit under the lease was a "contract right" to which Drew's security interest had attached. The security agreement between Drew and Samel specified that "contract rights" would have the meaning contained in Article 9 of the Uniform Commercial Code. The district court held that the deposit was within the purview of that term as defined by the Code. As initially briefed and argued on this appeal, the sole issue was again the determination of whether or not the lease deposit was a "contract right." The Government conceded that if we found that it was within the Code's definition of that term, then the deposit is subject to Drew's security interest, a lien prior in time to the Federal tax liens.

The problem presented in this appeal, therefore, turns on the issue of whether the $9,000 deposit under the lease agreement was a "contract right" as that term is defined by the Uniform Commercial Code. A ruling that the deposit was not a contract right would dispose of the entire case since no lien in favor of Drew could then have been created. This is a state law question, In re Halprin, 280 F.2d 407 (C.A.3, 1960), and since all relevant transactions took place in Pennsylvania, we must look to that state's law.

As defined by the U.C.C. and adopted by Pennsylvania, see 12A Purdon's Pa. Stat.Ann. § 9–106, a "contract right" means any right to payment under a contract not yet earned by performance and not evidenced by an instrument or chattel paper.

The Pennsylvania courts have had no occasion to rule on the question of whether a security deposit under a lease constitutes a contract right as that term is defined in the U.C.C. It is clear, however, that under Pennsylvania law a lease is considered a contract for possession of land in consideration of rent to be paid therefor. In re Wilson's Estate, 349 Pa. 646, 37 A.2d 709 (1944). Since it is clear that a lease is a contract, the question is therefore whether the right to return of the security deposit was a "right to payment under a contract not yet earned by performance." [1] The district court ruled that from the language of the lease itself [2] and from the nature

1. No contention is made that this is a right evidenced by an instrument or chattel paper.

2. Section 39 of the lease reads as follows:
   "SECURITY DEPOSIT: Lessee shall deposit with Lessor the sum of Nine Thousand Dollars ($9,000) as security for the faithful performance of all the terms and conditions of this Lease. If Lessee should fail at any time to comply with any of the terms and conditions of the Lease, Lessor

of the lease agreement, it was necessary for the lessee, Samel, to faithfully perform all the obligations imposed upon it under the lease agreement before its right to payment of the unused portion of the security deposit would mature.[3] The district court therefore concluded that the right to payment of the unused portion of the security deposit was a contract right within the definition and intention of the Uniform Commercial Code.

The Government argues that the $9,000 was, in actuality, a simple common law pledge; a bailment of security of an intangible character with the lessor to insure against the lessee's default and protect the lessor's right to performance under the lease. This contention, however, is directly contra to the holding of the Supreme Court of Pennsylvania in Handle, to Use of Keswick Theatres Corp. v. Real Estate-Land Title & Trust Co., 316 Pa. 116, 173 A. 313 (1934). There the court clearly held that under Pennsylvania law the relationship of a tenant to the landlord with respect to a security deposit is that of creditor and debtor.

We, therefore, rule that the security deposit was a contract right within the meaning of the Code and was thus covered by the perfected security agreement of appellee Drew. Drew's lien, having been perfected prior in time to the Government's tax liens, is superior to those of the Government.[4]

The judgment of the district court will be affirmed.

KALODNER, Circuit Judge (dissenting).

I disagree with the majority's ruling that in the instant case "the security deposit was a contract right within the meaning of the Code and was thus covered by the perfected security agreement of appellee Drew."

I am of the opinion that the right of return of a security deposit under a real estate lease is not a "contract right" within the meaning of the Uniform Commercial Code, as defined in Section 9–106. That being so, I would, without more, reverse the Order of the District Court granting summary judgment in favor of the appellee E. F. Drew & Co., Inc. and remand the cause with directions to enter summary judgment in favor of the United States.

---

shall have the right to use the said sum for the purpose of curing any default or for reimbursing Lessor for any damages or costs caused by such default, without affecting any other rights or remedies reserved to Lessor under the terms of this Lease. If the Lessee shall have faithfully complied with all the terms and conditions of this Lease and shall have left the premises in good order and condition, the aforesaid deposit, or so much thereof as shall not have been used for the purpose of curing any default, shall be repaid to the Lessee upon the termination of this Lease."

3. The Government contends that Samel's right to the security deposit never in fact matured because of Samel's default prior to the expiration of the lease. The lessor, however, suffered no damage and disclaimed any interest in the security deposit. Samel was thus entitled to the repayment of the entire deposit since no part of the money was used by the lessor.

4. Subsequent to oral argument and on our own motion, we requested that the parties submit supplemental briefs on issues concerning the applicability of the Federal doctrine that certain state-created liens satisfy Federal choateness criteria in order to have priority over Federal tax liens.

These issues were not presented to the district court and were raised for the first time in this case in response to our request. We are now of the view that it would be improper to allow the Government to proceed on a theory it had never raised prior to our request for additional briefs. Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 57 S.Ct. 569, 81 L.Ed. 755 (1937); United States v. Ivy Hall Apts., Inc., 310 F.2d 5 (C.A. 3, 1962).