**In re Robert F. WOOD, Robert F. Wood, P.C., Debtors.**

**Edwin M. LARKIN, Plaintiff,**

**v.**

**Robert F. WOOD, Robert F. Wood, P.C., Defendants.**

**Bankruptcy Nos. 83–21063, 83–21064. No. CIV–85–1474T.**

United States District Court, W.D. New York.

Nov. 17, 1986.

Edwin M. Larkin, Rochester, N.Y., pro se.

Debra Rougeux, Rochester, N.Y., for defendants.

## DECISION AND ORDER

TELESCA, District Judge.

This appeal is from the order of the Bankruptcy Court holding that the security interest in the accounts assigned to the plaintiff, Edwin M. Larkin, by the debtors [1] is unsecured due to the lack of perfection by filing under the Uniform Commercial Code. Specifically, the decision of the court below determined that the transaction in question did not fall within the exemptions from filing contained in U.C.C. § 9-302(1)(e).

The facts are relatively simple. Both the plaintiff and the defendant are practicing attorneys. They have had a continuing professional and personal relationship spanning a number of years. On or about March 15, 1977 Mr. Larkin loaned to his friend and attorney, Robert F. Wood, the sum of $10,000.00. The debtors executed a demand promissory note at that time including provision for the payment of interest. No payment was made on the note by either of the debtors for a period of five years. By letter agreement dated on or about June 3, 1982, the debtors agreed to pay to Mr. Larkin the sum of $1,000.00 within ten days of May 28, 1982 to be applied towards the payment of accrued interest. Subsequent payments would also be applied first to interest and then to reduction of the principal balance. In the agreement, the debtors also agreed to a limited assignment of the proceeds that might be due the debtors from two litigations in which the debtors were engaged.[2] The litigations provided for contingency fee agreements between Mr. Wood and his clients. The assignment of the contingency proceeds contained restrictions on the assignee's right to disclose the existence of

---

1. The letter agreement which reaffirmed the debt was signed by both Robert F. Wood, attorney and Robert F. Wood, P.C. Thus, the term "debtors" is used throughout this decision.

2. It was not until oral argument on this appeal that it became clear that at the time the 1977 loan was made, Robert Wood was borrowing money from a client. Although it is not an issue which the Bankruptcy Court dealt with,

nor one essential to the resolution of this appeal, I merely note that under New York law attorneys are prohibited from borrowing money from their clients. Such an action is considered unprofessional conduct. *See Disciplinary Rule 5-104(A). See also, Matter of Darrow,* 39 A.D.2d 62, 331 N.Y.S.2d 533; *Matter of Pacor,* 87 A.D.2d 392, 451 N.Y.S.2d 823; *Matter of Plewniak,* 91 A.D.2d 285, 458 N.Y.S.2d 771.

the assignment to any third parties, including the clients, or to participate in the prosecution of the underlying litigations or any settlement negotiations.[3]

On September 9, 1983, the debtors filed voluntary petitions pursuant to Chapter 11 of the Bankruptcy Code. In this proceeding, the debtors seek to avoid the security interest of Larkin and the proceeds subsequently received by the debtors from the settlement of the litigations.

In reaching its decision, the Bankruptcy Court reviewed numerous court decisions relating to the interpretation of U.C.C. 9–302(1)(e). Relevant language is:

(1) A financing statement must be filed to perfect all security interests except the following

(e) an assignment of accounts which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts of the assignor;

The official Comment 5 to the above section explains the policy as follows:

The purpose of the subsection (1)(e) exemptions is to save for *ex post facto* invalidation casual or isolated assignments: some accounts receivable statutes have been so broadly drafted that all assignments, whatever their character or purpose, fall within their filing provisions. Under such statutes, many assignments which no one would think of filing might have been subject to invalidation. The subsection (1)(e) exemptions goes to that type of assignment. Any

person who regularly takes assignments of any debtor's accounts should file ...

After reviewing the cases and learned articles on the subject, the Bankruptcy Court concluded that the appropriate standard to be applied in interpreting U.C.C. § 9–302(1)(e) is a combination of both the "percentage test" and "casual and isolated transaction test". Both tests need to be reviewed in conjunction with all of the facts and circumstances involved in the relationship between the parties and the transactions in which they are engaged. *See, generally,* 85 ALR 3d at 1050, 1053–54, 1062. *See also,* White and Summers, *Uniform Commercial Code* § 23–8.

No hard and fast rule interpreting U.C.C. 9–302(1)(e) can be established in view of the unlimited variety of facts and circumstances present in private lending transactions. A standard utilizing either or both the percentage test and the casual and isolated transaction test ought to be employed.

█ This Court supports the position of the Bankruptcy Court which utilized both the percentage test and the casual and isolated transaction test in applying U.C.C. 9–302(1)(e). However, the assignee need only satisfy one test to fall within the exemption from filing.

This Court elects to follow the policy stated in *In Re B. Hollis Knight Company,* 605 F.2d 397, 401 (8th Cir.1979):

Both of the policies underlying the two tests appear to be valid limitations on the scope of U.C.C. § 9–302(1)(e). The lan-

---

**3.** Bankrutpcy Court did not consider the question of whether under New York law, the assignment by an attorney of a contingent fee is against public policy. The law in New York is not clearly settled. *See, United States Fidelity & Guarantee Company v. Williamson,* 21 A.D.2d 790, 250 N.Y.S.2d 491 (1964), "an assignment, in whole or in part, of a fee which is yet to be earned can only dampen the enthusiasm of the lawyer for his client's cause and is subversive of the attorney-client relationship." The opposite position has been taken by the Appellate Division, First Department, *Douglas v. Benton,* 7 Misc.2d 872, 166 N.Y.S.2d 808, *aff'd.,* 7 A.D.2d 633, 180 N.Y.S.2d 245 (1st Dept. 1958).

For purposes of this appeal, while not condoning the practice of the assignment of contin-

gent fees, I have adopted the standard articulated by the Standing Committee on Professional Ethics of the American Bar Association in a 1965 opinion.

"It is the decision of the committee that the attorney should not interpose as a reason for not carrying out the agreement he made that the agreement is not ethical. This matter of ethics should have been recognized and adhered to by the attorneys before they entered into the agreement. When two lawyers have participated in an unethical agreement one of them should not, where no one else is involved, set up the unethical agreement against the other."

Informal opinion No. 870, cited in *Fabricius v. Freeman,* 466 F.2d 689, 692 (7th Cir.1972).

guage of the section would not permit an assignee to escape the filing requirements if he received a large portion of an assignors accounts whether or not the transaction was an isolated one.

Nor is it unfair to require a secured party who regularly takes such assignments to file, since the comments to U.C.C. § 9–302(1)(e) indicate that the section was designed as a narrow exception to the filing requirement—not applicable if the transaction was in the general course of commercial financing.

The Bankruptcy Court correctly determined that the burden of meeting each test is on the assignee. *Miller v. Wells Fargo Bank Int'l Corp.*, 406 F.Supp. 452 (S.D.N.Y.1975). The Court then held that Larkin failed to meet his burden in either test.

■ This Court will not disturb the Bankruptcy Court's finding that the assignee Larkin failed to meet his burden to demonstrate the size of the assignment made by the debtor in this case in relation to the debtor's other outstanding accounts at the time the assignment was not significant. However, in reviewing the application of the casual and isolated transaction test, the Court below incorrectly held that by reason of the fact that Mr. Larkin was an attorney at law, he should be familiar with the importance of perfecting security interests by filing and that this imputed professional knowledge excluded him as one of the members of the class protected under U.C.C. 9–302(1)(e). This was an erroneous interpretation of the casual and isolated transaction test and is not supported by any reported authority.

The casual and isolated transaction test requires the Court to examine the circumstances surrounding the transaction, including the status of the assignee, to determine whether the assignment was, in fact, casual and isolated. *Architectural Woods, Inc. v. State of Washington*, 88 Wash.2d 406, 562 P.2d 248 (1977). The underlying rationale behind the test is that it would not be unreasonable to require a secured creditor to file if he regularly takes assignments of a debtor's accounts, but it would

be unreasonable if this was not a usual practice. However, the authorities are clear that where the assignee is regularly engaged in commercial financing and routinely accepts assignments of accounts, perfection by way of filing under the U.C.C. is required regardless of the actual amount of the accounts assigned. *In Re B. Hollis Knight Co., supra.*

In reviewing the reported authority, the distinguishing fact in determining whether or not the *status* of the assignee required filing for protection turned on whether or not the assignee was involved in commercial lending or regularly took assignment of accounts. The Court however cited no authority for the stated proposition that attorneys who accept the security interest in an account are excluded from this exception to the filing requirement, nor has research revealed any. This Court is unable to find any authority which characterizes attorneys as a group which are ineligible to engage in casual and isolated assignments of accounts under U.C.C. 9–302(1)(e).

■ The record in this case clearly establishes that Larkin was not a commercial lender engaged in regularly accepting assignments from debtors. He made one loan to the debtors and subsequently obtained one assignment of the proceeds of two cases as collateral for the repayment of the loan. The record amply supports the conclusion that this was a casual and isolated transaction between two individuals who maintained a personal and professional relationship. That requires a finding that Larkin was not regularly engaged in the business of taking accounts, and therefore, he clearly falls within the exemption from filing under U.C.C. 9–302(1)(e). It was error for the Bankruptcy Court to hold otherwise.

## CONTEMPT

Plaintiff appeals from the Bankruptcy Court's denial of his motion to hold the debtor in contempt of the Bankruptcy Court's January 18, 1984 order denying the use of cash collateral received from the two

accounts in question. The Bankruptcy Court held that "because Mr. Larkin's claim is unsecured, there was no cash collateral which required by pre-approval of this Court." Given my holding that Mr. Larkin had a perfected security interest in the two accounts, I remand the question of contempt to the Bankruptcy Court for proceedings consistent with this opinion.

CONCLUSION

The Bankruptcy Court's holding that plaintiff's claim was unperfected and unsecured is reversed. Plaintiff had a perfected security interest in the two accounts as of June 4, 1982. This case is remanded to the Bankruptcy Court for proceedings not inconsistent with this opinion, including reconsideration of plaintiffs' motion for contempt.

SO ORDERED.