U.S. CLAIMS, INC., Plaintiff.

v.

FLOMENHAFT & CANNATA,
LLC, et al., Defendants.

Civil Action No. 2:06–CV–0978–LDD.

United States District Court,
E.D. Pennsylvania.

Nov. 13, 2006.

Memorandum Granting in
Part Reconsideration
Feb. 26, 2007.

Steven M. Coren, Kaufman Coren & Ress, PC, John W. Morris, Philadelphia, PA, for Plaintiff.

Jeffrey A. Zucker, Paul Joseph Cianci, Fisher Zucker LLC, Philadelphia, PA, for Defendants.

## MEMORANDUM

DAVIS, District Judge.

Presently before the Court is Defendant the Stillwater Asset–Backed Fund LP's Motion to Dismiss the Amended Complaint or to Transfer (Doc. No. 19) and Plaintiff's Response in Opposition (Doc. No. 24). Upon careful consideration of Plaintiff's pleadings, and after hearing oral argument on the matter on October 13, 2006, for the reasons set forth below, Defendant's Motion to Dismiss or Transfer is hereby GRANTED as to the dismissal of Count VI of the Amended Complaint (the declaratory judgment claim) and DISMISSED on the remaining grounds as moot.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff U.S. Claims, Inc. is a Delaware corporation engaged in the business of purchasing from attorneys fee interests in pending legal claims. Defendant Michael Flomenhaft is an attorney licensed to practice in New York, and is a partner of Defendant Flomenhaft & Cannata LLP, a New York Limited Liability Partnership (collectively "the Flomenhaft Defendants"). From late–2001 to mid–2003, the Flomenhaft Defendants allegedly executed a series of purchase agreements with Plaintiff, in which they agreed to sell their interests in future fees they would earn in various personal injury claims in exchange for a number of monetary advances from

U.S. Claims. Each agreement contains a list of a number of the law firm's clients ("claimants"), and the agreement purports to sell and assign to U.S. Claims an "interest" in the fees earned by the firm in connection with each claimant's claim. *See* Am. Compl., Ex. A at 1. Total fees are determined based on terms of the attorneys fee agreements the firm has with each client. *Id.* U.S. Claims' "interest" is calculated based on the amount originally advanced to the firm, with the "interest" owned by Plaintiff increasing every month, ultimately tapering off and resulting in a final amount after a period of one to two years, depending on the terms of the relevant purchase agreement. *See, e.g., id.,* Ex. A at 7–8. If any of the clients hires new counsel, or if any claims result in no proceeds, either as a result of an adverse verdict or a voluntary or otherwise termination, the firm must transfer to U.S. Claims "makeup fees" from other claims "in an amount at least equal to the estimated Fees with respect to any such Claim for which no Fee was payable." *Id.,* Ex. A at 4. U.S. Claims is entitled to one hundred percent (100%) of what the firm collects as its fee in connection with each named claimant's case, until such time as the firm fully satisfies Plaintiff's "interest." *Id.,* Ex. A at 1. No financing statements were ever filed by U.S. Claims with regard to any of these purchase agreements.

Subsequently, the Flomenhaft Defendants entered into a financing agreement with the Defendant the Stillwater Asset–Backed Fund LP ("Defendant Stillwater"), a New York partnership, in which the Flomenhaft Defendants pledged all their assets to Stillwater in exchange for a monetary advance. Am. Compl. ¶ 20. Stillwater filed a financing statement for this transaction in January 2005. *Id.* Plaintiff alleges Stillwater had knowledge of the terms of Plaintiff's agreements with the Flomenhaft Defendants because the Stillwater transaction was arranged by Brian Spira, a former representative of U.S. Claims who previously arranged the Plaintiff's financing transactions with the Flomenhaft Defendants. *Id.* at ¶ 21. After entering into the agreement with Stillwater, U.S. Claims alleges that the Flomenhaft Defendants have refused to honor their payment obligations to Plaintiff because they claim all their assets are now subject to Defendant Stillwater's lien. *Id.* at ¶ 22.

Plaintiff is suing the Flomenhaft Defendants for allegedly violating the purchase agreements and is proceeding against Defendant Stillwater for a declaratory judgment that Plaintiff's rights in the Flomenhaft Defendants' assets are superior to those of Stillwater. On September 29, 2006, Defendant Stillwater moved to dismiss Plaintiff's complaint (1) for failing to properly allege diversity of citizenship, (2) for improper venue under 28 U.S.C. § 1406(a), or in the alternative, for a change of venue to the Southern District of New York pursuant to 28 U.S.C. § 1404, and (3) for failure to state a claim. Plaintiff has subsequently amended its Complaint to cure the defect in its diversity of citizenship pleading.[1] Thus Defendant Stillwater's first ground for dismissal is now moot.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the complaint. *See Markowitz v. Ne. Land Co.,* 906 F.2d 100, 103 (3d Cir.1990);

---

1. Indeed, counsel for Defendant Stillwater acknowledged at oral argument that Plaintiff's Amended Complaint now properly alleges citizenship for purposes of establishing diversity jurisdiction. Tr. of Or. Arg. at 4.

*Sturm v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987). Dismissal for failure to state a claim is appropriate when it clearly appears that the plaintiff can prove no set of facts in support of the claim which would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Robb v. City of Phila.,* 733 F.2d 286, 290 (3d Cir.1984). In deciding a motion to dismiss pursuant to Rule 12(b)(6), all facts alleged in the complaint must be accepted as true. *Malia v. Gen. Elec. Co.,* 23 F.3d 828, 830 (3d Cir.1994). A court may also consider any document appended to and referenced in the complaint on which plaintiff's claim is predicated. *See* Fed.R.Civ.P. 10(c); *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410 (3d Cir.1997); *In re Westinghouse Sec. Litig.,* 90 F.3d 696, 707 (3d Cir.1996). While a court is to treat all facts alleged in the complaint as true when resolving a motion to dismiss, the same treatment does not extend to legal conclusions masquerading as facts. *See, e.g., Morse v. Lower Merion School Dist.,* 132 F.3d 902, 906 (3d Cir.1997); *Plasko v. City of Pottsville,* 852 F.Supp. 1258, 1261 (E.D.Pa.1994). Nor must a court accept as true conclusory allegations contradicted by documents underlying the complaint. *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295–96 (9th Cir.1998). A claim may be dismissed when the facts alleged and the reasonable inferences therefrom are legally insufficient to support the relief sought. *See Com. of Pennsylvania ex rel. Zimmerman v. PepsiCo., Inc.,* 836 F.2d 173, 179 (3d Cir.1988).

## III. DISCUSSION

In Count VI of its Complaint, Plaintiff seeks a declaratory judgment against Defendant. Am. Compl. ¶¶ 49–54. U.S. Claims alleges that because the purchase agreements at issue created sales of "payment intangibles" under Article 9 of the Uniform Commercial Code ("Article 9"), perfection was automatic pursuant to UCC § 9–309(3), and thus Plaintiff is entitled to a declaratory judgment that Plaintiff's security interest in the Flomenhaft Defendants' assets is superior to that asserted by Stillwater. *Id.* at ¶¶ 50–51. Defendant Stillwater has moved to dismiss this claim under Fed.R.Civ.P. 12(b)(6), arguing instead that the relevant purchase agreements involved sales of "accounts," and not of "payment intangibles." Therefore, Stillwater argues, since U.S. Claims did not perfect its interest by filing, Stillwater's perfected security interest in the Flomenhaft Defendants' assets has priority as a matter of law.

The creation of a valid and enforceable security interest requires (1) the secured debtor receive some value, (2) the debtor have rights in the collateral at issue, and (3) an agreement. UCC § 9–203(b).[2] When all three requirements are met, a security interest "attaches" to the collateral and is enforceable between the parties to the agreement. UCC § 9–203(a). The next step, "perfection," is necessary in order to maximize the secured creditor's rights (i.e. to establish priority) against third persons laying claim to the same collateral. 4 James J. White & Robert S. Summers, *Uniform Commercial Code* § 30–1(b) (5th ed.2002). Where there are conflicting security interests in the same collateral, priority is determined by looking to the order of perfection. *See* UCC § 9–322(a). Perfected security interests take priority over conflicting unperfected interests. UCC § 9–322(a)(2). The subjective knowledge of a secured creditor

---

**2.** Both parties agree that Revised Article 9 of the Uniform Commercial Code governs this

dispute.

with regard to another's conflicting security interest is irrelevant: the first to perfect prevails. UCC § 9–322, cmt. 4, ex. 2.

### A. Proper Characterization of the Transactions at Issue

The procedure required to perfect a security interest depends on the type of collateral involved. While perfection is most commonly accomplished through the filing of a financing statement, with some types of collateral, perfection is automatic. White & Summers, *supra* § 30–1(b). Therefore, resolution of the issue in this case turns on the proper legal characterization of the assets that are the subjects of the purchase agreements between U.S. Claims and the Flomenhaft Defendants. If, as Plaintiff claims, the purchase agreements provided for sales of "payment intangibles," perfection is automatic upon attachment, *see* UCC § 9–309(3), and Plaintiff prevails. On the other hand, if the transactions between U.S. Claims and the Flomenhaft Defendants involved sales of "accounts" as Stillwater argues, then Stillwater's perfected interest takes priority over Plaintiff's unperfected interest. *See* UCC § 9–102, cmt. 5(a) (when accounts are sold, financing statement must be filed to perfect buyer's interest); *see also* UCC § 9–322(a)(2) (perfected interests prevails over unperfected interests).

Under UCC § 9–102(a)(2), "account" is defined as "a right to payment of a monetary obligation, whether or not earned by performance ... for services rendered or to be rendered." "General intangible" is defined as "any personal property, including things in action, other than accounts," including "payment intangibles." UCC § 9–102(a)(42). "Payment intangible" is further defined as "a general intangible under which the account debtor's principal obligation is a monetary obligation." UCC § 9–102(a)(61).

The proper Article 9 characterization of interests like the ones at issue in this case has not been frequently litigated, as in most instances the parties do not dispute that legal fees, both earned and unearned, are properly characterized as "accounts" or "accounts receivable." *See Cadle Co. v. Schlichtmann,* 267 F.3d 14, 18 (1st Cir. 2001) (where law firm gave bank security interest in anticipated fees for particular case, court deemed the contingency fee agreement to be part of the firm's "accounts receivable"); *In re Holstein Mack & Klein,* 232 F.3d 611, 612 (7th Cir.2000) (court termed bank's security interest in legal fees to be earned from personal injury and class action suits by law firm interest in the firm's "receivables"). However, at least one court has squarely held that an unmatured contingency fee contract is an "account" under Article 9 of the UCC. *See PNC Bank v. Berg,* 1997 WL 527978, *9 (Del.Super.Ct. Jan.31, 1997). The precise question in *Berg* was whether a lender can take a security interest in a law firm's hourly billing and contingency fee contracts. *Id.* at *8. While neither party disputed that a matured contingent fee claim was an "account" under the UCC, the law firm argued that because of the contingent and uncertain nature of the fee agreements, the unmatured fee contracts could not be subject to securitization at all. *Id.* at *8–9. The *Berg* Court, however, concluded that matured or not, both the hourly billing and contingency fee contracts are "contract rights," defined as "any right to payment under a contract not yet earned by performance." *Id.* at *9 (citing *United States v. Samel Refining Corp.,* 461 F.2d 941, 942 (1972) (defining "contract rights" under Pennsylvania law)). Therefore, the fee contracts constituted "accounts" under the Uniform Commercial Code. *See id.* (noting that the UCC's definition of "accounts" was amended in 1972 to include contract rights).

However, Plaintiff argues that while the cases cited by Defendant Stillwater are correct, they nevertheless do not control the outcome here because those cases were "decided at a time when there was no concept of a payment intangible under the UCC." Pl.'s Resp. at 8. According to U.S. Claims, the concept of "payment intangible" was only added to the UCC in 2001. *Id.* Instead, Plaintiff relies on *In re Cohen* to distinguish between an "account" and a "payment intangible," arguing that since the *"sine qua non* of an account is the existence of a monetary obligation that is not contingent," the interests at issue here cannot be an "account" because the Flomenhaft Defendants' fees are contingent on the outcomes of the underlying tort claims. *Id.* (citing *In re Cohen,* 305 B.R. 886, 903 (B.A.P. 9th Cir.2004)). This Court disagrees.

█ First, while it is true that among the revisions to Article 9 was the addition of a separate definitional provision for "payment intangible," contrary to Plaintiff's assertion, the concept nevertheless existed in the UCC prior to 2001. *See* 2 Eldon H. Reiley, *Security Interests in Personal Property* § 33:9 (Oct.2005) (noting that while payment intangible was not defined previously, "what revised Article 9 separately defines as a payment intangible, existed as a general intangible under the original text"); *see also U.S. Test, Inc. v. NDE Environmental Corp.,* 196 F.3d 1376, 1383 (Fed.Cir.1999) (citing to Article 9 of the UCC, in which "general intangibles" is defined to "include [ ] payment intangibles and software"). Regardless, the Delaware Superior Court reached its decision based on an interpretation of the then definition of "account," a definition that has not changed in any material way since *Berg. Compare* UCC § 9–102(a)(2) (current version) ("a right to payment of a monetary obligation, whether or not

earned by performance ... for services rendered or to be rendered") *with* UCC § 9–106 (previous version) ("any right to payment ... for services rendered ... whether or not it has been earned by performance"). Revised Article 9 did nothing to change the concept of "account," in fact, the revisions only expanded it; the current definition sweeps under its coverage many categories of rights to payment previously categorized as "general intangibles" under the prior version of Article 9. UCC § 9–102, cmt. 5(a). Indeed, commentators have remarked that "the expanded definition of accounts has virtually eaten up the category of payment intangibles." 1 Eldon H. Reiley, *Security Interests in Personal Property* § 4:14 (Oct. 2005). Furthermore, irrespective of whether "payment intangibles" existed when *Berg* was decided, neither party disputes that "payment intangibles" are a subclass of "general intangibles": every "payment intangible" is necessarily also a "general intangible." UCC § 9–102, cmt. 5(d). Therefore, if legal fee agreements were "accounts" and *not* "general intangibles" under the earlier Article 9, they certainly cannot become a sub-category of "general intangibles" now.

Second, *Cohen* is inapposite to the disposition of this case. In *Cohen,* the Cohens pledged the anticipated proceeds of their pending tort claim in exchange for a loan from a neighbor. 305 B.R. at 889. The Bankruptcy Panel held that the pledge constituted a transfer of a "general intangible." *Id.* at 904. The interest was not a "payment intangible" or an "account" because at the time the expectation was pledged, the action had not yet been reduced to settlement or judgement and thus there existed no contractual obligation to pay between the alleged tortfeasor and the Cohens. *Id.* at 903. Unlike the case in *Cohen,* the subjects of the security interests in *Berg* and in this case arise not from

tort, but from contract—that is, from the fee agreements in place between the attorneys and the clients. What was transferred by virtue of the purchase agreements at issue here was not the underlying tort claims of the claimants, but rather the right of the Flomenhaft Defendants to collect legal fees for the services they provided in prosecuting those claims. The "contingency" in *Cohen* was whether the tort claim would ever result in any obligation on the part of the alleged tortfeasor to pay the Cohens since there was no underlying contract creating that obligation. But where a fee contract is involved, no such contingency exists because there is nevertheless a "right to payment," even if that *right* is rendered more speculative by the fact that the *amount* of payment earned by future performance depends on a favorable resolution of the underlying legal action. Furthermore, as counsel for Stillwater pointed out at oral argument, nothing in Article 9's definition of "account" supports Plaintiff's contention that any contingency necessarily precludes the asset from being classified as an "account." *See* Pl.'s Resp. at 8 ("[t]he distinction between an *account* and a *payment intangible* involves the amount of risk inherent in the asset . . . [a] payment intangible may be contingent or not; an account is in no way contingent").

As such, this Court is persuaded by the conclusion of the *Berg* Court that unmatured contingency fee agreements are a form of "contract right" and thus are "accounts." *See Berg,* 1997 WL 527978 at *9. Nothing in *Cohen* disturbs the sound holding of *Berg.* The fee contracts at issue here created rights to receive payment for services to be rendered by the Flomenhaft Defendants on behalf of their clients, and thus fall squarely under Article 9's definition of "account." *See* UCC § 9–102(a)(2) ("[a]ccount . . . means a right to payment of a monetary obligation, whether or not

earned by performance . . . for services rendered or to be rendered").

**B. Stillwater's Knowledge of the Purchase Agreements**

■ Plaintiff further argues that because Defendant Stillwater had actual knowledge of U.S. Claims' security interest in certain assets of the Flomenhaft Defendants at the time Stillwater acquired its interest, this "places the lien priority discussion in a different light." Pl.'s Resp. at 9. Presumably, Plaintiff is suggesting that Stillwater's subjective knowledge should somehow subordinate its security interest, notwithstanding its perfection. However, this argument is in direct contravention of the clear dictates of Article 9 that a creditor's subjective knowledge is wholly irrelevant to the question of lien priority. White & Summers, *supra* § 33–3 (under UCC § 9–322, "[i]f the competitor filed first or perfected first . . . that is the end of it; that party wins even if aware of the other party's prior but unperfected claim at time of filing"). The Article 9 rules on priority are clear: perfected interests prevail over unperfected ones, UCC § 9–322(a)(2), and the first to perfect wins, UCC § 9–322(a)(1). As such, Plaintiff's argument to the contrary must be rejected.

**C. Applicability of the Automatic Perfection Provision in UCC § 9–309(2)**

■ Lastly, Plaintiff asserts that even if the assets transferred by the purchase agreements are "accounts," the assignments were nevertheless subject to automatic perfection under UCC § 9–309(2) because they did not collectively transfer a significant part of the Flomenhaft Defendants' outstanding accounts. Pl.'s Resp. at 9; *see* UCC § 9–309(2) (automatic perfection occurs in the case of "[a]n assignment of accounts . . . which does not by itself or

in conjunction with other assignments to the same assignee transfer a significant part of the assignor's outstanding accounts"). The first time Plaintiff raised this alternate argument was in its response to Stillwater's Motion to Dismiss. However, the Amended Complaint is completely devoid of the factual allegations necessary to establish the applicability of UCC § 9–309(2), namely that the purchase agreements at issue collectively did not result in the transfer to U.S. Claims of a significant part of the Flomenhaft Defendants' outstanding accounts. Therefore, since Plaintiff has failed to adequately plead the potential applicability of UCC § 9–309(2) in its Amended Complaint, the Court cannot consider this ground in resolving the instant Motion to Dismiss.[3]

## IV. CONCLUSION

The Court concludes that the purchase agreements executed between the Flomenhaft Defendants and Plaintiff constituted sales of "accounts" under Article 9 and thus are not subject to automatic perfection. Therefore, because Plaintiff did not filed the requisite financing statements, Plaintiff's security interest is unperfected and thus is subordinate to Defendant Stillwater's perfected conflicting interest. UCC § 9–322(a)(2).

In conclusion, Plaintiff cannot prevail on its declaratory action against Stillwater because Stillwater's interests are superior as a matter of law. Since Defendant Stillwater will be dismissed from this action, the other arguments raised in its Motion to Dismiss or Transfer with regard to venue are thus rendered moot. An appropriate Order follows.

## ORDER

AND NOW, this 13th day of November 2006, upon consideration of Defendant the Stillwater Asset–Backed Fund LP's Motion to Dismiss the Amended Complaint or to Transfer (Doc. No. 19), Plaintiff's Response in Opposition (Doc. No. 24), and hearing oral argument on the matter on October 13, 2006, it is hereby ORDERED that Defendant's Motion to Dismiss or Transfer is GRANTED with respect to Count VI of the Amended Complaint (the declaratory judgment action against the Stillwater Asset–Backed Fund LP), and DISMISSED as moot with regard to the remaining grounds. It is further ORDERED that Count VI of the Amended Complaint shall be DISMISSED, and that the Stillwater Asset–Backed Fund LP shall be DISMISSED from the case.

## MEMORANDUM ON MOTION FOR RECONSIDERATION

Presently before the Court are Plaintiff's Motion for Reconsideration (Doc. No.

---

**3.** In any event, the Court notes that the UCC § 9–309(2) exception is unlikely to aid Plaintiff in its position even if it had been adequately pled. While nothing in the plain text of the provision appears to bar its application to this case, the official comments make patently clear that the exception is not intended to apply to assignors like U.S. Claims: "[t]he purpose of [§ 9–309(2)] is to save from *ex post facto* invalidation casual or isolated assignments—assignments which no one would think of filing. Any person who regularly takes assignments of any debtor's accounts or payment intangibles should file." UCC § 9–309, cmt. 4; *see also* 9 Lary Lawrence, *Law-rence's Anderson on the Uniform Commercial Code* § 9–302:19 (3d ed. rev.2006) (regular financiers should know of filing requirement and generally are not protected by this exception). Plaintiff is a financial enterprise engaged in the business of purchasing attorneys' fee interests. *See* Am. Compl. ¶ 1. Furthermore, as U.S. Claims' interests at issue are alleged to have totaled in excess of three million dollars, it is hard to believe that a sophisticated corporation like Plaintiff would have regarded the transactions as "casual" such that it failed to consider that it may be necessary to file in order to protect its interests.

29), Plaintiff's Motion to Amend/Correct Motion for Reconsideration (Doc. No. 30), Plaintiff's Motion for Leave to File (Doc. No. 35), and Defendant the Stillwater Asset–Backed Fund LP's Response in Opposition thereto (Doc. No. 39).

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The facts underlying this dispute are simple. Plaintiff U.S. Claims, Inc. ("USC") is a financial corporation primarily engaged in the business of purchasing from plaintiffs interests in their personal injury claims. On occasion, USC also purchases from personal injury attorneys the attorneys' fee interests in the clients' pending tort claims. In this case, USC entered into several of these latter transactions with attorney Michael Flomenhaft and his law firm ("Flomenhaft Defendants"). However, the Flomenhaft Defendants allegedly subsequently entered into a financing agreement with Defendant the Stillwater Asset–Backed Fund LP ("Stillwater") in which they pledged all their assets to Stillwater. Stillwater filed a financing statement for the Flomenhaft interests; USC did not file. USC then instituted this action alleging that the Flomenhaft Defendants failed to pay USC proceeds as provided in their purchasing agreements, and asserted a single claim, seeking a declaratory judgment against Stillwater in its pre-dismissal Amended Complaint.[1] The key issue in this case turns on the priority of USC's security interest relative to that of Stillwater.

In comparison, the procedural history of this case has been exceedingly complex. On September 19, 2006, Stillwater moved to dismiss USC's declaratory judgment claim.[2] After full briefing and oral arguments, the Court granted Stillwater's motion on November 13, 2006 and dismissed Plaintiff's claim against Stillwater. On November 24, Plaintiff filed a timely motion for reconsideration ("First Motion") arguing that Plaintiff should be allowed to amend its complaint to plead the applicability of the automatic-perfection provision in Article 9 of the Uniform Commercial Code ("UCC"). Fourteen days later, on December 8, Plaintiff filed a motion seeking to amend or correct its original reconsideration motion ("Second Motion"). In its Second Motion, Plaintiff argued: (1) the Court should reconsider its dismissal ruling because it did not follow the Rule 12(b)(6) standard but instead "assumed or inferred facts that were not pled" by Plaintiff; (2) USC should be granted leave to amend its complaint to plead the applicability of the automatic-perfection UCC provision; and (3) in the alternative, the Court should certify its dismissal of Stillwater as a final judgment under Rule 54(b). Stillwater did not respond to either of these post-dismissal motions because these motions were not served on Stillwater's counsel.[3]

1. Prior to ruling on Stillwater's Motion to Dismiss, Plaintiff had already twice amended its complaint, once as of right and once with leave of court. (*See* Doc. Nos. 15, 22.) At issue in the Court's November 13, 2006 dismissal Order was Plaintiff's Second Amended Complaint. Plaintiff is presently seeking leave to file its Third Amended Complaint.

2. Alternatively, Stillwater sought a transfer of venue to the Southern District of New York. Because the Court concluded that Plaintiff had failed to state a claim against Stillwater, it denied Stillwater's transfer request as moot.

3. Apparently, as a result of this Court's November 13, 2006 dismissal Order, Stillwater and its counsel, Mr. Jeffrey Saltz, were terminated from the case's electronic distribution list on ECF by the Clerk. When Plaintiff's counsel later filed his post-dismissal motions, he apparently did not discern from the Notice of Electronic Filing that Stillwater's counsel was no longer on the recipient list for electronic service in the case. However, some-

On January 10, 2007, USC, through its new counsel, filed a motion for leave to supplement its previous motions ("Third Motion"). In this latest filing, Plaintiff contends this Court should (1) grant reconsideration of its November 13, 2006 Order because controlling New York law compels a different result; (2) grant reconsideration to allow Plaintiff to plead automatic-perfection; (3) allow Plaintiff to amend its complaint to add two additional defendants and an additional plaintiff to the action and (4) to assert three additional tort claims against Stillwater; or otherwise (5) certify Stillwater's dismissal as final for purposes of appeal. On February 2, 2007, Stillwater responded in opposition to all of USC's post-dismissal motions.

## II. LEGAL STANDARD

The purpose of a motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985). A judgment may be altered or amended if the party seeking reconsideration demonstrates at least one of the following grounds: (1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or to prevent a manifest injustice. *Max's Seafood Cafe v. Quinteros,* 176 F.3d 669, 677 (3d Cir.1999). A motion for reconsideration is not a vehicle through which to rehash previously litigated but rejected legal arguments, nor is it "properly grounded on a request that a court rethink a decision it has already made." *Drysdale v. Woerth,* 153 F.Supp.2d 678, 682 (E.D.Pa.2001).

New arguments that could have been raised prior to entry of judgment are not properly considered on a motion for reconsideration. *Federico v. Charterers Mut. Assur. Ass'n Ltd.,* 158 F.Supp.2d 565, 578 (E.D.Pa.2001). Because the strong judicial interest in the finality of judgments, motions for reconsideration should only be sparingly granted. *Continental Cas. Co. v. Diversified Indus., Inc.,* 884 F.Supp. 937, 943 (E.D.Pa.1995).

Leave to amend pleadings shall be "freely given when justice so requires." Fed.R.Civ.P. 15(a). Notwithstanding this general liberal standard, courts are not required to grant such leave where there is undue delay, bad faith, dilatory motive, or undue prejudice to the opposing party, or if amendment would be futile. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir.2002). Amendment is futile if the proposed amendment would not cure the deficiency in the original complaint or if the proposed amendment would nevertheless not withstand a renewed motion to dismiss. *Jablonski v. Pan Am. World Airways, Inc.,* 863 F.2d 289, 292 (3d Cir. 1988). Rule 12(b)(6) standards apply to determining futility of amendment. *Pierce v. Rossetta Corp.,* 1992 WL 165817, *5 (E.D.Pa. June 12, 1992) (citing *Jablonski,* 863 F.2d at 292).

## III. DISCUSSION

### A. Timeliness of Plaintiff's Successive Motions

As recounted above, following this Court's November 13, 2006 Order, Plaintiff

---

time in mid-December, Stillwater's counsel was carbon-copied on some correspondence from Plaintiff's new counsel to this Court which referenced the pending post-dismissal motions. Mr. Saltz immediately wrote to ap-

prise the Court of the unusual circumstances and to request an extension of time in which to respond to the outstanding motions. The Court granted the request on December 28, 2006.

filed three separate motions over the span of two months seeking various forms of relief. Each of these subsequent motions sought relief or made arguments not previously raised. Defendant Stillwater did not timely respond to the first two motions because it was not served. In Plaintiff's most recent filing, USC seeks to supplement its original Motion for Reconsideration by raising a new legal argument with regard to this Court's dismissal Order and by requesting to amend its pre-dismissal complaint to add new tort claims against Stillwater. Stillwater responds that such belated arguments are untimely under the Local Rules and should not be considered.

Local Rule of Civil Procedure 7.1(g) provides that motions for reconsideration must be filed within ten days after the entry of the judgment or order concerned. Although Plaintiff's First Motion seeking leave to re-plead its claim against Stillwater under the automatic-perfection rubric was timely, it is clear that USC's subsequent filings, to the extent they raised different grounds for relief (or sought additional relief altogether), were not. Had Stillwater been timely served, it is possible that it would have responded in opposition to the First Motion and any subsequent Plaintiff motions would have presented this timeliness issue in a different procedural light. Nevertheless, while Stillwater's frustration in this situation is understandable, the Court will nevertheless consider all of the issues raised by Plaintiff in its Third Motion on the merits because such consideration would not inure undue prejudice to Stillwater.[4]

## B. USC's Motion for Reconsideration

Plaintiff argues reconsideration of the Court's dismissal Order is necessary be-cause (1) controlling New York law not previously brought to the Court's attention compels the conclusion that the security interests at issue are "payment intangibles" and (2) the Court erroneously based its decision on facts that were not pled in deciding to dismiss the claim against Stillwater and in any event, Plaintiff should be allowed to amend its complaint. While it was unclear to the Court at the time of its November 13, 2006 decision whether USC could have pled the sufficient factual foundation to sustain the application of automatic perfection under UCC § 9–309(2), because the Court's Order was not explicit as to whether Plaintiff would be given the opportunity to amend its complaint to cure the deficiency, reconsideration here is warranted. *See Alston v. Parker*, 363 F.3d 229, 232 (3d Cir.2004) (a dismissal order that does not specify whether dismissal was with or without prejudice is deemed an "adjudication on the merits"); *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir.2000) (district courts should make explicit whether plaintiff has leave to amend when dismissing claims under Rule 12(b)(6)). However, even upon reconsideration, neither USC's new legal argument nor its proposed amendment alters this Court's earlier conclusion that Plaintiff's declaratory judgment claim must be dismissed.

### 1. *Attorney charging liens*

New York law provides that attorneys who appear on behalf of their clients have statutory liens on the clients' personal injury claims. N.Y. Jud. Law § 475. These charging liens attach to any verdicts or judgments rendered in the clients' favor. *Id.* The New York Court of Appeals has

---

**4.** Furthermore, to the extent Plaintiff seeks a Rule 54(b) certification and to amend its complaint to add additional parties or claims, such requests need not be made in the context of a reconsideration motion. As such, the Court will construe Plaintiff's filings with regard to such issues as separate filings, for which Local Rule 7.1(g) would not apply.

held that the effect of such statutory liens is to give attorneys a "vested property interest" and an "equitable ownership interest in the client's cause of action." *LMWT Realty Corp. v. Davis Agency Inc.*, 85 N.Y.2d 462, 626 N.Y.S.2d 39, 649 N.E.2d 1183, 1186 (1995). Citing these principles, Plaintiff argues the interests purchased from the Flomenhaft Defendants are "things in action" and thus are "general intangibles" rather than "accounts" under the UCC. The Court disagrees.

■■■ "General intangibles" are defined in Article 9 of the UCC as "any personal property, including things in action, *other than accounts.*" UCC 9–102(a)(42) (emphasis added). The official commentary further make clear that "general intangible" is a residual category intended to serve as a catchall for various types of collateral which are not otherwise specifically defined in Article 9. UCC § 9–102, cmt. 5(d). Therefore, because the Court has previously concluded that the interests are issue are "accounts," they, by definition, cannot be "things in action" or "general intangibles." [5]

Nor is the Court persuaded that the cases it relied on in concluding that the Flomenhaft interests are "accounts" are distinguishable because they did not apply New York law. *See Cadle Co. v. Schlichtmann*, 267 F.3d 14, 18 (1st Cir.2001) (Massachusetts law); *In re Holstein Mack & Klein*, 232 F.3d 611, 612 (7th Cir.2000)

(Illinois law); *PNC Bank v. Berg*, 1997 WL 527978, *9 (Del.Super.Ct. Jan.31, 1997) (Delaware law). As Stillwater correctly notes, New York is not unique in recognizing attorney liens; attorneys in Massachusetts, Illinois and Delaware all have similar charging lien protections. *See* Mass. Gen. Laws ch. 221, § 50 (charging lien created by statute); 770 Ill. Comp. Stat. 5/1 (same); *Polin v. Delmarva Poultry Corp.*, 188 A.2d 364, 366 (Del.Super.Ct.1963) (recognizing lien at common law). Therefore, that *Cadle, Holstein Mack & Klein* and *Berg* were not decided under New York law do not diminish their applicability to this dispute. Furthermore, *In re Wood*, a case cited by Plaintiff in its motion for a different proposition, lends further support to this Court's conclusion that the interests at issue are "accounts" under New York law. 67 B.R. 321 (W.D.N.Y.1986). Indeed, the security interests at issue in *Wood* were similar to those in this case: at dispute in *Wood* was an attorney's assignment to a third party of the proceeds of a number of contingency fee agreements he had with his clients. *Id.* at 322. Applying New York law, the *Wood* court termed the interests at issue "accounts" under Article 9. *Id.*

In conclusion, USC has not identified any manifest legal error. After considering Plaintiff's newly raised argument on the merits, the Court remains convinced that the Flomenhaft interests are "ac-

---

**5.** Additionally, the Court notes, without deciding, that Plaintiff's contention that the interests at issue are "things in action" appears to be on questionable legal footing. As an initial matter, while "things in action" in ordinary legal parlance may refer to rights in causes of action, *see Black's Law Dictionary* 234 (7th ed.1999) (definition of "chose in action" or "thing in action"), it is clear the only types of tort claims allowed as original collateral under Article 9 are commercial tort claims. UCC § 9–102, cmt. 5(g) ("[a] tort claim may

serve as original collateral under this Article only if it is a 'commercial tort claim' "). However, commercial tort claims are expressly excluded from the definition of "general intangibles." UCC § 9–102(a)(42) (general intangible is "any personal property, including things in action, other than ... commercial tort claims"). Furthermore, the official comments indicate that as used in the definition of "general intangible," "things in action" generally refers to intellectual property rights. *See* UCC § 9–102, cmt. 5(d).

counts" and not "payment intangibles" under Article 9.

### 2. *Automatic perfection under UCC § 9–309(2)*

■ Alternatively, Plaintiff seeks leave to amend its complaint to plead the application of UCC § 9–309(2). Section 9–309(2) creates an exception to the general rule that one must file a financing statement in order to perfect one's security interest; the section provides that an assignment of accounts that "does not by itself or in conjunction with other assignments to the same assignee transfer a significant part of the assignor's outstanding accounts" perfects automatically upon attachment.[6] Now, with the issue properly before it, the Court holds, based on Plaintiff's proposed amended allegations, that the automatic perfection protections of § 9–309(2) do not apply in this case.

According to Plaintiff's proposed amended complaint, USC and U.S. Claims of America, Inc. ("USC America")[7] "were primarily in the business of purchasing . . . 'payment intangibles'" directly from personal injury plaintiffs. *See* Proposed Am. Compl. ¶ 34. Plaintiff claims that only approximately 1% of USC's and USC America's customer relationships involved the purchase of attorney fee interests. *Id.* ¶ 16. Therefore, Plaintiffs argue, because the vast majority of their business involved the purchase of "payment intangibles" for which perfection is automatic under § 9–

309(3), they should be able to avail themselves of the filing exception in § 9–309(2) for "accounts" because they "had no experience with the filing of financing statements." *Id.* ¶ 35. In short, Plaintiffs contend that since they infrequently dealt with the purchase of attorney fee interests, they were not regular financiers, and the transactions at issue are "casual or isolated" and thus perfected automatically under § 9–309(2).

However, this contention is expressly refuted by the relevant statutory commentary. The official comments to § 9–309(2) provide that the purpose to this particular exception is "to save from *ex post facto* invalidation casual or isolated assignments—assignments which no one would think of filing." UCC § 9–309, cmt. 4. In particular, the commentary is explicit that "[a]ny person who regularly takes assignments of any debtor's accounts *or payment intangibles* should file." *Id.* (emphasis added); *see also, e.g.,* 9 Lary Lawrence, *Lawrence's Anderson on the Uniform Commercial Code* § 9–302:19 (3d ed. rev. 2006) (regular financiers should know of filing requirement and generally are not protected by § 9–309(2)); *Valley Bank of Nev. v. City of Henderson,* 528 F.Supp. 907, 914 (D.Nev.1981) (quoting 1 G. Gilmore, *Security Interests in Personal Property,* § 19.6 at 538 (1965)) (then-existing § 9–309(2) was "carefully drafted so that no assignee, engaged in a regular

---

**6.** Contrary to USC's contention, this Court did not decide as a matter of law that this provision would be inapplicable in Plaintiff's case in its November 13, 2006 Order. Rather, the Court concluded that it could not decide whether § 9–309(2) could apply because Plaintiff did not plead the requisite factual basis to establish the provision's application. Furthermore, the Court merely expressed the concern, based *solely* on Plaintiff's own characterization of itself as a "financial enterprise which, *inter alia,* pur-

chases portions of an attorney's fee interest in pending litigation claims," *see* Am. Compl. ¶ 1, that it may not qualify to claim automatic perfection under § 9–309(2).

**7.** Plaintiff USC also proposes to amend its complaint to add USC America as a plaintiff to the action because USC America was allegedly a party to some of the purchase agreements at issue. *See* Proposed Am. Compl. ¶ 21.

course of financing, will ever be tempted to rely on it in order to avoid a filing which ought to be made"). As such, since Plaintiffs by their own admissions regularly dealt in "payment intangibles," they clearly cannot claim the aid of § 9–309(2).[8] *See, e.g., Valley Bank of Nev.,* 528 F.Supp. at 914 (then-existing § 9–309(2) "was never intended to provide an escape hatch for negligent institutional financiers"). Even taking all of Plaintiffs' factual allegations in its proposed amended complaint as true, the Court concludes that Plaintiffs' claim for declaratory judgment against Stillwater would not withstand a motion to dismiss. Therefore, Plaintiff's motion for leave to amend its declaratory judgment claim must be denied because the proposed amendment would be futile. *See Jablonski,* 863 F.2d at 292.

### C. USC's Motion to Amend Its Complaint

Plaintiff also seeks leave to amend its complaint to add an additional plaintiff, USC America, and two additional defendants, Brian Spira and the Oxbridge Group, LLC.[9] With regard to these proposed additions, given the dictate of Rule 15(a) that leave to amend be "freely giv-

en," the Court finds that it would be in the interests of justice to allow Plaintiff to amend its complaint at this juncture.

Furthermore, Plaintiff requests leave to add several additional claims against Stillwater, including claims of conversion, tortious interference, and aiding and abetting. Defendant Stillwater argues that these latter proposed causes of action should be rejected because they are all merely Plaintiff's failed Article 9 claim dressed in common law clothes. However, at this point, the Court cannot say, based solely on Plaintiff's proposed amended complaint and Stillwater's generalized arguments in opposition, that the new claims sought to be added against Stillwater[10] must fail as a matter of law.[11] Given that this litigation is still in the early stages and factual discovery is still in progress, Stillwater has failed to establish that it would be unduly prejudiced if the Court allowed the amendment. *See Grayson,* 293 F.3d at 108 (leave to amend should be freely granted unless there is undue delay, dilatory motive, bad faith or undue prejudice to opponent).

Therefore, Plaintiff will be granted leave to amend its complaint to add additional

---

**8.** The primary cases cited by Plaintiff in support of its argument that § 9–309(2) applies in this case, *In re B. Hollis Knight Co.,* 605 F.2d 397 (8th Cir.1979) and *In re Wood,* 67 B.R. 321 (W.D.N.Y.1986), do not compel a different conclusion. The precise issue addressed in those two cases was whether the "casual or isolated" or "percentage" tests would apply to determine whether a particular assignment constitutes a "significant part" of the assignor's accounts under § 9–309(2). However, in this case, at issue is the more preliminary question of whether a corporation which admittedly regularly takes assignments of payment intangibles (but allegedly not of accounts) can claim automatic perfection under § 9–309(2) as a matter of law. Because this Court concludes that the claimed filing exception cannot apply to

Plaintiffs, it does not reach the *Hollis Knight* and *Wood* question of what "significant part" means in the context of § 9–309(2).

**9.** Spira and Oxbridge allegedly brokered the financing transaction between Stillwater and the Flomenhaft Defendants.

**10.** As a procedural matter, the Court construes Plaintiff's request to add additional claims against Stillwater as occurring in the context of USC's motion for reconsideration seeking leave to file an amended complaint against Stillwater.

**11.** Once Plaintiff files its newly amended complaint, parties of course may then answer or otherwise respond as allowed under the Federal Rules.

parties and new claims against Stillwater. However, as discussed previously, Plaintiff's proposed amendment with regard to its declaratory claim against Stillwater will not be granted because amendment would be futile. *See, e.g., Graham v. Smith,* 219 F.R.D. 206, 210 (D.Me.2004) (granting leave to amend as to some claims but denying leave to amend for others based on futility).

### D. Rule 54(b) Certification

 Finally, Plaintiff asks that this Court certify the dismissal of Defendant Stillwater on the declaratory judgment claim as a partial final judgment under Rule 54(b). In a case involving multiple parties or multiple claims, judicial orders disposing of one or more claims or dismissing one or more parties are not ordinarily considered final judgments for purposes of appeal. *Carter v. City of Phila.,* 181 F.3d 339, 343 (3d Cir.1999). However, Rule 54(b) provides that in certain instances, a court may render an ordinarily non-final order immediately appealable under 28 U.S.C. § 1291 if it expressly concludes that "there is no just reason for delay" and directs the entry of judgment. Fed. R.Civ.P. 54(b); *Carter,* 181 F.3d at 343 (district courts must provide a statement of reasons when entering judgment pursuant to Rule 54(b)). The party seeking Rule 54(b) certification bears the burden of demonstrating that its is the "infrequent harsh case meriting a favorable exercise of discretion." *Allis–Chalmers Corp. v. Phila. Elec. Co.,* 521 F.2d 360, 365 (3d Cir. 1975).

 Here, Plaintiff has failed to carry its burden. In support of its Rule 54(b) request, Plaintiff simply argues "[c]ertification is appropriate because the sound judicial administration of this case would be aided by resolution of the claims against Stillwater before or contemporane-

ous with the unajudicated [*sic*] claims against the [Flomenhaft Defendants]." Memorandum in Support of Pl.'s Motion for Leave to File, at 15. However, even if the dismissal of the declaratory judgment claim here is a "final judgment," where resolution of a number of pending factual and legal issues in the case may ultimately moot USC's declaratory claim, and where USC has asserted other related claims against Stillwater which are still pending in this litigation, the Court concludes that the interests of promoting sound judicial administration and discouraging piecemeal litigation are not furthered by granting Rule 54(b) certification at this point. *See Curtiss–Wright Corp. v. General Elec. Co.,* 446 U.S. 1, 8, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980) ("[i]t is left to the sound judicial discretion of the district court to determine" when to certify under Rule 54(b)).

## IV. CONCLUSION

In conclusion, for the reasons set forth above, Plaintiff's Motion for Reconsideration is granted to the extent it seeks the opportunity to amend its declaratory action claim against Stillwater, and denied as to the remaining grounds. However, upon reconsideration, Plaintiff's declaratory judgment claim is again dismissed. Additionally, Plaintiff's Motion for Leave to File an Amended Complaint is granted in part and denied in part, and Plaintiff's request for Rule 54(b) certification is denied. An appropriate Order follows.

### ORDER

AND NOW, this 26th day of February 2007, upon consideration of Plaintiff's Motion for Reconsideration (Doc. No. 29), Plaintiff's Motion to Amend/Correct Motion for Reconsideration (Doc. No. 30), Plaintiff's Motion for Leave to File (Doc. No. 35), and Defendant the Stillwater Asset–Backed Fund LP's Response in Oppo-

sition thereto (Doc. No. 39), it is hereby ORDERED as follows:

1. Plaintiff's Motions for Reconsideration (Doc. No. 29, 30, 35) are GRANTED insofar as Plaintiff seeks the opportunity to amend Plaintiff's declaratory action claim against Defendant Stillwater, and are DENIED as to the remaining grounds.

2. Upon reconsideration, Count VI of the Amended Complaint (declaratory action claim against Stillwater) is again DISMISSED, as Plaintiff's proposed amendments are futile.

3. With regard to Plaintiff's Motion for Leave to File (Doc. No. 35):

 a. Plaintiff is DENIED leave to amend its complaint on its declaratory action claim because Plaintiff's proposed amendments would be futile.

 b. Plaintiff is GRANTED leave to amend its complaint to add U.S. Claims America as a plaintiff, and Brian Spira and the Oxbridge Group, LLC as additional defendants in the action. Plaintiff is further GRANTED leave to amend its complaint to assert additional claims against the new defendants.

 c. Plaintiff is GRANTED leave to amend its complaint to add additional claims against Defendant Stillwater.

4. Plaintiff shall, consistent with this Order and accompanying Memorandum, file its Third Amended Complaint by March 5, 2007.

5. Plaintiff's request for a Rule 54(b) certification is DENIED.