**Bochetto & Lentz P.C. v. WFIC, LLC**

C.P. of Philadelphia County, April Term 2014, No. 1010

*George Bochetto* and *John A. O'Connell*, for plaintiff.

*Arthur W. Lefco, Aaron E. Moore, Brian P. Flaherty, Stephen A. Cozen* and *Matthew L. Bleich*, defendants.

MCINERNEY, *J.*, Sept. 22, 2014—This is a wrongful use of civil proceeding action filed by plaintiff Bochetto & Lentz, P.C. (hereinafter "Bochetto & Lentz") against defendants Michael Trachtman, Esquire, Benjamin Anderson, Esquire and Powell Trachtman Logan Carrle & Lombardo, P.C. (hereinafter "attorney defendants") and WFIC, LLC, Ace American Insurance Company and West Chester Fire Insurance Company (hereinafter "corporate defendants") for initiating and continuing the action captioned *WFIC v. LaBarre, et. al.*, September Term No. 3183 ("the underlying action"). Presently before the court are defendants' respective preliminary objections.

I. Martin v. Turner Action

Defendants Ace American Insurance Company and West Chester Fire Insurance Company insured and represented attorney Alan Turner, Esquire ("Turner") in a legal malpractice action brought by Larry Martin ("Martin") in Federal Court and captioned *Martin v. Turner*, docket no. 2:10-cv-01874 (E.D. Pa.)("Martin Action"). (Com. ¶ 5, 24). The attorney defendants were hired by Ace American Insurance Company and West Chester Fire Insurance Company to represent Turner in

the Martin Action. (Com. ¶33).

In the Martin Action, Martin alleged that Turner failed to renew a UCC-1 filing statement concerning Martin's $1.4 million loan to Polymer Dynamics, Inc. ("PDI"). (Com. ¶ 25). Between October 1, 1998 and March 25, 1999, Martin made three loans to Polymer Dynamics, Inc. ("PDI") totaling $1,400,000.00.[1] PDI defaulted on the loans and on June 28, 2001, Martin confessed judgment against PDI in the amount of $1,404,999.31.[2]

On October 24, 2001, PDI and Martin entered into a settlement agreement wherein PDI executed and delivered a promissory note in favor of Martin in the amount of $1,730,147.95. To secure the promissory note, on October 25, 2001, PDI executed and delivered to Martin a Collateral Assignment and security agreement which gave Martin a first position security interest, after satisfaction of PDI's attorneys' fees and tax liens, in the proceeds derived from a lawsuit filed by PDI against Bayer Corporation (Bayer lawsuit). In the Bayer lawsuit, PDI alleged that Bayer machinery malfunctioned causing PDI to become insolvent.[3] On October 26, 2001, Turner, Martin's attorney filed a UCC-1 financing statement regarding the security interest in the Bayer proceeds. In 2006, Turner failed to renew Martin's UCC-1 against PDI and another creditor of PDI, PAFCO Investments, LLC took priority over Martin and Martin received nothing from PDI. (Com. ¶ 26-27).

Turner's defense in the Martin action was that Martin's loan to PDI was a "payment intangible"[4] that did not

---

1. Exhibit "F" to the complaint-complaint filed in *WEIC v. LaBarre*, ¶ 10.

2. *Id.* at ¶ 11.

3. Id at ¶ 12, 13).

4. A payment intangible is a subset of a general intangible under which the account debtor's principal obligation is a monetary obligation. 13 Pa. C. S. § 9102. General intangibles are defined as any per-

rely for its priority on a UCC-1, but was automatically perfected. (Com. ¶ 28). Prior to trial, the *Martin v. Turner* case settled. Defendant Ace Insurance Company tendered Turner's entire policy amount, $1,000,000.00, in return for a complete release from Martin and an assignment of Martin's remaining rights in the *PDI v. Bayer* litigation. (Com. ¶ 29). Turner and Insureds assigned Martin's remaining rights in the *PDI v. Bayer* litigation to WFIC, an entity which did not exist at the time of the settlement in *Martin v. Turner*. (Com. ¶ 32). Upon the *Martin v. Turner* settlement, the corporate defendants retained the attorney defendants to initiate a civil action on behalf of WFIC against PDI's various creditors. Those creditors included Bochetto & Lentz who were paid by PDI based upon the assignment received from the *Martin v. Turner* settlement. (Com. ¶ 35).

II. Bochetto & Lentz's Involvement and the Underlying Action.

In 2009, PDI had retained Bochetto & Lentz to prosecute a claim against its trial counsel in the *PDI v. Bayer* case, Bruce McKissick. (Com. ¶ 44). On October 22, 2009, one of PDI's attorneys, Donald LaBarre, Esquire paid $100,000 from his attorney escrow account to Bochetto & Lentz as a retainer. Bochetto & Lentz represented PDI and incurred fees in excess of $100,000. (Com. ¶ 45).

On September 19, 2011 defendant attorney Anderson forwarded a letter to Bochetto & Lentz informing it that

---

sonal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, goods, instruments, investment property, letter-of-credit rights, letters of credit, money and oil, gas or other minerals before extraction. The term includes payment intangibles and software. *Id.* Title 13 Pa.C.S § 9309(2) provides that an assignment of a "payment intangible" is automatically perfected only if the assignment "does not by itself or in conjunction with other assignments to the same assignee transfer a significant part of the assignor's outstanding…payment intangibles".

suit would be instituted against it to recover the $100,000 paid to it for the legal services rendered to PDI. (Com. ¶ 50). On September 27, 2011, after an exchange of correspondence between defendant attorneys and Bochetto & Lentz, a complaint was filed captioned *WFIC, LLC v. LaBarre*, et. al. September term 2011 no. 3183 ("the underlying action"). (Com. ¶ 54). The underlying action was filed against numerous creditors of PDI including Bochetto & Lentz seeking to recoup moneys allegedly paid to them. The underlying action alleged claims for conversion, civil conspiracy, tortuous interference with contract and unjust enrichment. (Com. ¶ 56). Bochetto & Lentz filed preliminary objections to WFIC's complaint which were overruled by the court.

The Hon. Gary S. Glazer held a "bifurcated trial" in the underlying matter and framed the relevant legal issues as follows: (1) Whether Larry Martin perfected a security interest in the proceeds of the Bayer litigation and if so, was that security interest superior to all other security interests in the proceeds of the Bayer litigation at the time it was perfected; (2) If the answer to question 1 is yes, whether that security interest thereafter continued to be superior to all the security interests in the proceeds of the Bayer litigation; and (3) whether the assignment of Martin's rights to the proceeds of the Bayer litigation from Martin to WFIC was a valid assignment capable of being enforced by the court. (Com. ¶ 65-66).

Each party briefed the issues and on November 7, 2013, the Hon. Gary S. Glazer issued his order and opinion holding that Martin's alleged interest in PDI's anticipated judgment was not an automatically perfected payment intangible. (Com. ¶ 67-69). Bochetto & Lentz filed a motion for summary judgment on the basis of the November 7, 2013 order and opinion. (Com. ¶ 71). WFIC

did not contest the motions for summary judgment and on February 28, 2014, the court granted Bochetto & Lentz's motion for summary judgment. (Com. ¶ 72,74). In April 2014, Bochetto & Lentz commenced this action against the attorney defendants and the corporate defendants for wrongful use of civil proceedings for initiating and continuing the underlying matter.

## DISCUSSION

To withstand a demurrer, the instant complaint must at least include the factual allegations required for wrongful use of process under the applicable law.[5] Wrongful use of civil proceedings is a tort which arises when a party institutes a lawsuit with a malicious motive and lacking probable cause.[6] The elements that must be established for a viable cause of action pursuant to the Dragonetti Act ("Act") are as follows:

(a) Elements of action. — A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2) The proceedings have terminated in favor of the person against whom they are brought.[7]

Thus, in an action for wrongful use of civil proceedings, the Act requires Bochetto & Lentz to establish that (1) the

5. *Shaffer v. Stewart*, 326 Pa. Super. 135, 473 A.2d 1017(1984).
6. *Hart v. O'Malley*, 781 A.2d 1211, 1219 (Pa. Super. 2001).
7. 42 Pa.C.S.A. § 8351.

attorney defendants procured, initiated or continued the underlying action against them, (2) the proceedings were terminated in Bochetto & Lentz's favor, (3) the attorney defendants did not have probable cause for the underlying action, (4) the primary purpose for which the proceedings were brought was not that of securing the proper discovery, joinder of parties or adjudication of the claim on which the proceedings were based, and (5) Bochetto & Lentz suffered damages as set forth in § 8355 (damages).

Specifically at issue in these preliminary objections is whether the attorney defendants and the corporate defendants had probable cause to bring the underlying action. The act defines probable cause as it applies to the attorney defendants and the corporate defendants as follows:

A person who takes part in the procurement, initiation or continuation of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either:

(1) Reasonably believes that under those facts the claim may be valid under the existing or developing law;

(2) Believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or

(3) Believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.[8]

---

8. 42 Pa C. S. § 8352. Section (1) and (3) apply to attorney defendants and section (2) applies to corporate defendants.

The existence of probable cause is a matter of law for the court to decide.[9]

Upon review of the complaint's allegations as well as the existing case law, it is clear that Bochetto & Lentz failed to state a claim for wrongful use of civil proceedings. There is a lack of controlling case law in this jurisdiction and outside this jurisdiction on the issue of whether assignments of anticipated proceeds in litigation constitute a payment intangible subject to automatic perfection. Indeed, the court in the underlying action readily acknowledged a lack of relevant precedent in this jurisdiction on the issue.[10] The attorney defendants and the corporate defendants cannot be deemed to have lacked probable cause to initiate and continue the underlying matter solely because the court in the underlying matter determined that the Martin assignment was not a payment intangible after reviewing conflicting case law.

Moreover, it is clear that the funds in dispute were not clearly protected by 13 Pa.C.S. § 9332 as suggested by Bochetto & Lentz. Bochetto & Lentz allege that the attorney defendants lacked probable cause to prosecute the underlying matter because they accepted the $100,000 payment for PDI as payment for legal services without knowledge of Martin's alleged right to receipt of funds from the Bayer award, citing 13 Pa.C. S. §9332. Title 13 Pa.C. S. §9332 provides in relevant part are as follows:

> (a) Transferee of money. — A transferee of money takes the money free of a security interest unless the transferee acts in collusion with the debtor in violating the rights of the secured party.

---

9. *Gentzler v. Atlee*, 443 Pa. Super. 128, 660 A.2d 1378 (1995).

10. Judge Glazer relied upon a 9th Circuit Court of Appeal opinion, *In re Cohen*, 305 B.R. 886 (9th Cir. 2004) when he held Martin's assignment was not an automatic payment intangible.

(b) Transferee of funds from deposit account. — A transferee of funds from a deposit account takes the funds free of a security interest in the deposit account unless the transferee acts in collusion with the debtor in violating the rights of the secured party.[11]

In the case at bar section (a) does not apply since the funds received by Bochetto & Lentz do not constitute "money". "Money" as defined by the UCC refers to currency.[12] Bochetto & Lentz did not receive currency, it received funds. Therefore, section (a) does not apply.

Furthermore, section (b) does not apply. Section (b) only applies if Bochetto & Lentz received the funds from a deposit account. A deposit account is defined as a "demand, time, savings, passbook or similar account maintained with a bank. A deposit account does not include investment property or accounts evidenced by an instrument".[13] It is undisputed by the parties that the account from which Bochetto & Lentz received its $100,000 distribution was an escrow account set up and maintained by PDI's counsel, LaBarre.[14] An escrow account, however, is not a deposit account and therefore reliance upon § 9332 (b) is misplaced to demonstrate lack of probable cause.[15] Based on the forgoing, this court concludes there was probable cause to assert claims against Bochetto & Lentz in an effort to recover amounts paid to Bochetto & Lentz and therefore the preliminary objections are sustained.[16]

---

11. 13 Pa. C.S.A. § 9332.

12. Official comment to 5(a) to 13 Pa. C. S. A. § 9103 (definitional section).

13. 13 Pa. C.S.A. § 9102.

14. Exhibit "G" to plaintiff's complaint.

15. See, In re Quaker Distributors, Inc., 189 B.R. 63,72 (Bankr. E.D. Pa. 1995) aff'd in part, 207 B.R. 82 (E.D. Pa. 1997).

16. The court is not persuaded by plaintiff's argument that since attorney defendants counsel herein argued "vociferously" for another defendant in the underlying matter against the merits of the payment intangible theory that such is sufficient to allege lack of probable cause.

Bochetto & Lentz also rely upon allegations it classifies as judicial admissions to support the lack of probable cause element. The alleged admissions are Martin's statements in the underlying Martin action repudiating the payment intangible theory, attorney defendants' statements in correspondence to Bochetto & Lentz that they lacked the requisite facts to impose liability upon Bochetto & Lentz under the UCC and the settlement in the Martin malpractice action. The court finds that these alleged admissions are insufficient to satisfy the requisite element of lack of probable cause.

First, the alleged judicial admissions in the Martin action regarding the viability of the payment intangible theory are conclusions of law which do not qualify as judicial admissions. Whether Martin's interest in the litigation proceeds constituted a payment intangible is an issue of law. Admissions to legal conclusions are not judicial admissions. Similarly, the allegation that the Martin action settled is not a judicial admission and does not suggest a lack of probable cause to bring this action. Although, the defense in the Martin action was based on the payment intangible theory, said defense was never tested and the issue was never judicially resolved. For an averment to qualify as a judicial admission, it must be a clear and unequivocal admission of fact. Judicial admissions are limited in scope to factual matters otherwise requiring evidentiary proof, and are exclusive of legal theories and

---

Arguments against the theory do not equate to lack of probable cause. Just because someone loses its argument does not justify an action for wrongful use of civil process. In an attempt to elevate form over substance, Bochetto & Lentz rely upon the verification attached to the WIFC complaint to dispel probable cause. The court finds the verification argument to be misplaced since the law is at issue not the facts. Moreover, plaintiff's allegation characterizing the assignment to WFIC as champertous is not relevant in determining the existence of probable cause to bring the underlying matter.

conclusions of law.[17] Since the Martin action settled, it remains unclear and equivocal as to whether the theory would have been successful.

As for the alleged admissions in attorney defendants correspondence, attached as exhibits "C and E" to the complaint, said alleged admissions do not support the allegation that the attorney defendants lacked the requisite facts to impose liability upon Bochetto & Lentz. On the contrary, the reasonable inference one draws from the correspondence is that as the attorney defendants understood the law, after investigation and research, they had a reasonable belief that the action was valid under the clearly existing law.[18]

The presence of probable cause, however, does not necessarily defeat the entire cause of action for wrongful use of civil proceedings, as "the clear language of Section 8351 permits a cause of action to be based on gross negligence or lack of probable cause."[19] Gross negligence is defined as the want of even scant care and the failure to exercise even that care which a careless person would use.[20] Bochetto & Lentz rely on the same allegations used to allege probable cause, to support gross negligence. For instance, Bochetto & Lentz rely upon allegations of clearly established law on the issue of payment intangibles, the UCC, the settlement of the Martin action and the absence of WFIC's verification to allege gross negligence. As

17. *Cogley v. Duncan*, 32 A.3d 1288, 1292 (Pa. Super. 2011).

18. *See* exhibits "C" ("However, under the law as we understand it, all recipients of those payments that should have been paid first to WFIC's assignor, in accordance with the priority of his security interest, are deemed to have converted the funds they received.") and "E" ("We have investigated and researched this matter very carefully.")

19. *Buchleitner v. Perer*, 794 A.2d 366, 378 (Pa. Super. 2002) (quoting *Bannar v. Miller*, 701 A.2d 242, 249 (Pa. Super. 1997)) (emphasis added).

20. *Hart v. O'Malley*, 781 A.2d 1211, 1218 (Pa. Super. 2001). *Keystone Freight Corp. v. Stricker*, 31 A.3d 967, 973 (Pa. Super. Ct. 2011).

discussed supra, said allegations are not sufficient to state a claim for wrongful use of proceedings based on lack of probable cause or gross negligence. As discussed above, there is a dearth of controlling case law on this complex issue and a failure to succeed on the underlying claim does not equate to gross negligence. Similarly, the settlement of the Martin action does not equate to gross negligence. Based on the forgoing, the attorney defendants and corporate defendants' preliminary objections as to gross negligence are sustained.[21]

## CONCLUSION

Based on the foregoing, the attorney defendants and corporate defendants' preliminary objections are sustained and the complaint is dismissed.

## ORDER

And now, this 22nd day of September 2014, upon consideration of defendants preliminary objections to plaintiff's complaint and all responses in opposition, it hereby is ordered as follows:

1. Defendants Michael Trachtman, Esquire, Benjamin Anderson, Esquire and Powell Tractman Logan Carrle & Lombardo, P.C. preliminary objections to plaintiff's complaint are sustained.

2. Defendants WFIC, LLC, ACE American Insurance Company and West Chester Fire Insurance Co.'s preliminary objections are susatined.

It is further ordered that the complaint is dismissed against all defendants.

_____

21. Since this court finds that the elements of probable cause and gross negligence have not been pled, the remaining objections are moot.